IN RE the MATTER OF the ESTATE OF Wesley LLOYD, a/k/a Wesley E. Lloyd, Deceased:

Christine M. LLOYD, Plaintiff-Respondent,†

v.

Harold LLOYD, Defendant-Appellant.††

Court of Appeals

*No. 91-1745. Oral argument February 27, 1992.—Decided July 29, 1992.*

(Also reported in 487 N.W.2d 644.)

†Petition to review denied.
††Petition to cross review denied.

242

245

248

On behalf of the defendant-appellant, there were briefs by *Charles K. Wildermuth* of Green Lake and *Donna Cacic Wissbaum* of Montello. There was oral argument by *Donna Cacic Wissbaum.*

On behalf of the plaintiff-respondent, there was a brief and oral argument by *Gordon S. Johnson, Jr.* of *Gonyo & Johnson Law Office* of Berlin.

Before Brown, Anderson and Snyder, JJ.

SNYDER, J.   This case arises under Wisconsin's marital property law. Wesley Lloyd died in 1990. The dispute before us is between Harold Lloyd, Wesley's nephew, and Christine Lloyd, Wesley's widow. Harold seeks to inherit certain real estate and money from certificates of deposit (CDs) and bank accounts (collectively, "bank accounts") left to him in Wesley's will but claimed by Christine to be marital property.

The trial court determined that Wesley had nearly $330,000 in marital property, $256,000 of which Wesley had attempted to pass to Harold by right of survivorship by establishing joint accounts with Harold. The court concluded that Christine was entitled to half of the $330,000. We affirm the trial court's determinations that some of the accounts either were established with marital property or were so commingled as to defy tracing of a nonmarital component. We reverse as to others, however, because we conclude that the nonmarital component was traced adequately. In addition, we agree with Harold that the real estate is not marital property and we reverse that portion of the judgment.

Wesley and Christine were married on May 14, 1979, the second marriage for both. They were domiciled in Wisconsin throughout the marriage. Although Wesley had no children, Christine had two daughters from her former marriage. Wesley and Christine had no children together. Neither Wesley nor Christine executed a unilateral statement. *See* sec. 766.59, Stats. Likewise, the spouses did not enter into any type of agreement classifying or reclassifying either their solely or jointly owned property. *See* secs. 766.585, 766.587, 766.588 and 766.589, Stats.

When Wesley and Christine married, each owned separate residences; Christine also owned a cottage on a lake. Throughout most of the marriage, Christine and Wesley lived together in Wesley's house, which remained titled in his sole name. Christine conveyed her residence to her daughters in 1984, just as she had done in 1980 with her cottage. Christine did not consult or notify Wesley about either conveyance.

In May 1984, Wesley executed a will. The will made specific bequests to certain relatives and friends and pro-

vided that the residue should go to Christine. If Christine predeceased Wesley, the residue was to go to Harold.

In 1989, Christine filed for divorce. Wesley then executed a codicil to his will which revoked the provision giving the residue of his estate to Christine, leaving it instead to Harold. About the same time, Wesley instructed Harold, as his power of attorney, to transfer certain assets and change the ownership of some CDs despite a court order prohibiting the transfer and disposal of property during the pendency of the divorce.

Wesley died on March 7, 1990, before the divorce was final. Three months later, Christine filed notice to take under the widow's election of deferred and augmented marital property. *See* secs. 861.02 and 861.03, Stats. Harold objected. The trial court found that Wesley's residence and most of the over forty bank accounts and CDs were marital property.[1] Harold appeals.

## I.  STANDARD OF REVIEW

The trial court and the parties term the trial court's determinations that the various assets were marital or nonmarital property "factual findings." That is incorrect. We agree that a trial court's tracing or commingling determinations are findings of fact which will not be set aside unless clearly erroneous. *Brandt v. Brandt,* 145

[1]The trial court determined that three of the accounts (Mutual Savings & Loan CD Nos. 8072001041 and 80720020290 and Farmers and Merchants Bank Account No. 31653), all joint accounts between Wesley and Harold, were nonmarital property. The classification of these three accounts is not challenged on appeal. Also unchallenged is the determination that both First National Bank CD No. 8422752, a joint account between Wesley and "Vernon Smith," and Mutual Savings & Loan Bank Account No. 8062–0015562 are marital property.

Wis. 2d 394, 407, 427 N.W.2d 126, 130 (Ct. App. 1988). However, the legal significance of those facts—*i.e.,* whether the property is marital or nonmarital property—is a question of law. *See Wierman v. Wierman,* 130 Wis. 2d 425, 433, 387 N.W.2d 744, 748 (1986); *see also Klinefelter v. Dutch,* 161 Wis. 2d 28, 33, 467 N.W.2d 192, 194 (Ct. App. 1991). Also, the issues on appeal require application of the marital property law, ch. 766, Stats., to undisputed facts. This presents a question of law which we review *de novo. See Hobl v. Lord,* 162 Wis. 2d 226, 233, 470 N.W.2d 265, 268, *cert. denied,* 112 S. Ct. 440 (1991). We are not bound by the trial court's legal conclusions or by legal conclusions the trial court has denominated factual findings. *See Janesville Community Day Care Center, Inc. v. Spoden,* 126 Wis. 2d 231, 236–37, 376 N.W.2d 78, 81 (Ct. App. 1985).

## II.   MARITAL PROPERTY PRINCIPLES

### A.   Generally

The classification of the property at issue is important because it determines how much, if any, of an asset may be disposed of freely at death. At death, a spouse may freely dispose of only the one-half interest he or she has in each item of marital property. *See* secs. 766.31(3) and 861.01, Stats. By contrast, the spouse may freely dispose of the whole of each item of his or her nonmarital property. *See* 1 K. Christiansen, F. Wm. Haberman, J. Haydon, D. Kinnamon, M. McGarity & M. Wilcox, *Marital Property Law in Wisconsin* sec. 2.161a, at 2-218 (2d ed. 1986). Classification also determines the surviving spouse's elective rights under secs. 861.02 and 861.03, Stats. Generally, the marital property law first applies to spouses on their determination date.

Section 766.03(1), Stats. The spouses' determination date is the date on which the last of the following three events occurs: (1) marriage; (2) both spouses are domiciled in Wisconsin; or (3) January 1, 1986. Section 766.01(5), Stats. Wesley's and Christine's determination date thus is January 1, 1986.

■■

The enactment of ch. 766, Stats., by itself does not alter the classification and ownership rights of property acquired before the determination date. Section 766.31(8), Stats. Such property is referred to as "unclassified" or "predetermination date" property. *Marital Property Law in Wisconsin* sec. 2.10a, at 2–20. Predetermination date property is not individual property,[2] or a type of individual property, nor does it imply a classification all its own. *Id.,* sec. 2.70, at 2–112. Rather, each item of predetermination date property has its own particular incidents of ownership which attached under the law that governed before the determination date and that continue except as altered by ch. 766. *Id.,* sec. 2.70, at 2–112.[3] Although predetermination date property is not individual property, during marriage it is treated *as if* it were, *see* sec. 766.31(9), and at death is subject to a

[2]Individual property is property owned by a spouse at a marriage which occurs after 12:01 a.m. on January 1, 1986, if both spouses are domiciled in Wisconsin at the time of the marriage. Section 766.31(6), Stats.

[3]Chapter 766, Stats., does not alter the classification and ownership rights of predetermination date property except for: the "as if individual" rule during the marriage, sec. 766.31(9), Stats.; the deferred marital property elections at death, secs. 861.02 and 861.03, Stats.; and the "income treatment" rule, sec. 766.31(4). 1 K. Christiansen, F. Wm. Haberman, J. Haydon, D. Kinnamon, M. McGarity & M. Wilcox, *Marital Property Law in Wisconsin* sec. 2.72, at 2–113 (2d ed. 1986).

deferred marital property analysis if the marital property presumption is overcome. *See* sec. 858.01(2), Stats.

## B. Marital Property

██ Our analysis begins with the basic premise that unless classified otherwise by ch. 766, Stats., all spousal property either is, or is presumed to be, marital property. Section 766.31(1), (2), Stats. The challenger bears the burden of establishing that the property is not marital. *See* secs. 766.31(2) and 903.01, Stats. The basic presumption favoring a marital property classification may be rebutted by demonstrating that the time (*e.g.*, before marriage or after dissolution), method (*e.g.*, by gift or inheritance), or source (*e.g.*, purchased with nonmarital assets) of the asset's acquisition establishes it as nonmarital property. To determine what property is to be designated "marital property," we look to sec. 766.31 and focus only on property acquired by the spouses on or after January 1, 1986.

██ Income earned or accrued by a spouse or attributable to property of a spouse during marriage and after the determination date is marital property. Section 766.31(4), Stats. Consequently, mixing income with any other property reclassifies the other property to marital property if the nonmarital component cannot be traced. Section 766.63(1), Stats. Where it can be traced satisfactorily, the presumption of marital property is rebutted for that component. *See id.*

Marital property also can be created if, without being reasonably compensated, one spouse applies to *either* spouse's nonmarital property "substantial labor, effort, inventiveness, physical or intellectual skill, crea-

tivity or managerial activity" and the property substantially appreciates as a result. Section 766.63(2), Stats.

In a marital property scheme, title is not synonymous with ownership and proof that title to an asset is in one spouse or the other will not rebut the basic presumption. *Marital Property Law in Wisconsin* sec. 2.23a, at 2–31. Title functions principally to establish management and control rights. Consistent with this principle, the right to manage and control property neither determines classification nor rebuts the presumption favorable to marital property. Section 766.51(5), Stats.

Applying the law to the facts, then, Wesley could have caused his nonmarital bank accounts to be reclassified to marital property by mixing them with marital property to the extent that the nonmarital component cannot be traced. Further, a marital property component could have been created in Wesley's real estate if either Wesley's or Christine's undercompensated efforts caused the property to substantially appreciate.

## C. Deferred Marital Property

If any of the property is determined not to be marital property, our next inquiry is whether it is "deferred marital property." *See* sec. 858.01(2), Stats. Deferred marital property is "property acquired while spouses are married and while ch. 766 does not apply, which would have been marital property under ch. 766 if it were acquired when ch. 766 applied." Section 851.055, Stats.

Whether deferred marital property exists is considered only at death, and then only in the context of the two elective rights granted a surviving spouse. *See* secs. 861.02 and 861.03, Stats.; *see also Marital Property Law*

*in Wisconsin* sec. 2.72, at 2-115 to 2-116. Deferred marital property is not a classification of property. *Id.,* sec. 2.109, at 2-170. In this case, then, we presume that any property acquired between May 14, 1979 (the wedding date) and January 1, 1986 (the determination date) is deferred marital property. Property acquired before May 14, 1979 is not deferred marital property, although it could become so through mixing. Here too, the challenger bears the burden of rebutting the presumption by tracing the property to a nonmarital source.

If we determine that any of the property is deferred marital property, we then must examine whether any of that property is part of the augmented marital property estate. *See* secs. 861.03 and 861.05, Stats. Section 861.05 recites what types of transfers of property are included in the augmented marital property estate. Under sec. 861.05(2)(c), joint tenancies[4] with third parties are among those transfers. *See* Legislative Council Note, 1985, Wis. Stat. Ann. sec. 861.05. Section 861.05 applies only to transfers on or after April 4, 1984,[5] however, unless the dispositive provisions in the instrument were materially changed after April 3, 1984. *See* sec. 861.05(4); *see also Marital Property Law in Wisconsin* sec. 2.114f, at 2-189 to 2-190. Thus, Christine has no elective rights with respect to lifetime transfers of

---

[4]Although a joint account is a statutory creation as opposed to a true common law joint tenancy, at least one Wisconsin case appears to equate the two. *See Fowler v. Fowler,* 158 Wis. 2d 508, 518, 463 N.W.2d 370, 373 (Ct. App. 1990).

[5]April 4, 1984 is the date the governor signed the original marital property act and the date that citizens should have been aware that the rules of deferred marital property could extend to certain nonprobate transfers. *Marital Property Law in Wisconsin* sec. 2.114f, at 2-189 to 2-190.

deferred marital property to joint accounts with Harold before that date.

Finally, if any property has been wrongly transferred, the surviving spouse may pursue remedies against either the decedent's estate or the gift recipient. *See* sec. 766.70(1), (6)(b), (6)(c), Stats.

## D. Tracing Rules

Although ch. 766, Stats., does not specify how tracing is to be done, the general principles can be stated as follows. Acquisition of an asset involves either the payment of money, the exchange of another asset, or the incurrence of an obligation. *Marital Property Law in Wisconsin* sec. 3.21a, at 3–11. The source of the money or asset exchanged or the classification of the obligation incurred determines the classification of the asset acquired. *Id.* The first step, therefore, is to determine the particular property's classification at a particular time, such as on the date of marriage, the determination date, or the date the asset was acquired. *Id.,* sec. 3.20, at 3–8. It is necessary to have records of each transaction from the time a particular asset is acquired until the marriage terminates. *Id.,* sec. 3.21a, at 3–12. If the challenger can trace the source of payment for the acquisition of an asset by a spouse during the marriage and after the determination date to nonmarital assets, the acquired asset is nonmarital. *See id.,* sec. 2.51b, at 2–89. Similarly, if an asset is mixed, tracing to a nonmarital property source preserves the traced component's nonmarital property character. *See id.*

Direct tracing can be accomplished by using an investment account. *Id.,* sec. 3.21a, at 3–12. Direct tracing constitutes actual proof of the classification from the

257

initial receipt of the funds to the point at issue. *Id.* Unless a unilateral statement is executed, the spouse not only must record each deposit and each expenditure, but also must maintain a record of interest earned on individual property and predetermination date property. That interest is marital property. Section 766.01(10), Stats. If tracing proves impossible at any point in an asset's history, the asset is transformed to marital property. *See* sec. 766.63(1), Stats.

If during the marriage and after the determination date an asset constituting predetermination date property is sold and the proceeds reinvested, the newly acquired asset also is predetermination date property. *Id.,* sec. 2.74, at 2–122; *see also* sec. 766.31(8), Stats. If the property or proceeds cannot be traced to predetermination date property, however, the newly acquired property is presumed to be marital property. *See* secs. 766.31(2) and 766.63(1), Stats.

No Wisconsin case law has yet developed which interprets the principles of mixing and tracing commingled property in a ch. 766, Stats., setting. While we recognize that chs. 766 and 767, Stats., are intentionally distinct, *Kuhlman v. Kuhlman,* 146 Wis. 2d 588, 593, 432 N.W.2d 295, 297 (Ct. App. 1988),[6] we nonetheless gain insight from cases which deal with property divi-

[6]Like the Uniform Marital Property Act, Wisconsin's marital property law is not meant to interfere with the equitable division of property at divorce or to ordain an equal division when not otherwise indicated. *Kuhlman v. Kuhlman,* 146 Wis. 2d 588, 591–92, 432 N.W.2d 295, 296–97 (Ct. App. 1988). Rather, ch. 766, Stats., provides the rules which govern ownership, management and control of property during marriage and the rules governing disposal of property at death. *Id.* at 592, 432 N.W.2d at 297. Section 767.255, Stats., by contrast, determines property ownership at divorce by considering the "real needs" of divorcing par-

sion in the context of divorce to the extent that they deal with characterizing and tracing property, rather than its ultimate disposition. *See, e.g., Bonnell v. Bonnell,* 117 Wis. 2d 241, 245–48, 344 N.W.2d 123, 126–27 (1984); *Brandt,* 145 Wis. 2d at 409–13, 427 N.W.2d at 131–33; *Trattles v. Trattles,* 126 Wis. 2d 219, 222–28, 376 N.W.2d 379, 381–84 (Ct. App. 1985); and *Weiss v. Weiss,* 122 Wis. 2d 688, 692–94, 365 N.W.2d 608, 610–12 (Ct. App. 1985).

We conclude that for purposes of the discussion at hand, "other than marital property" in the context of ch. 766, Stats., is analogous to "nonmarital property"—property exempt from division—in the divorce context. In the divorce context, "nonmarital" property must retain both its character and identity if its exempt status is to be preserved. *Brandt,* 145 Wis. 2d at 410, 427 N.W.2d at 131.

"Character" addresses the manner in which the parties have chosen to title or treat their assets. *Id.* at 410, 427 N.W.2d at 132. The transfer of solely owned property into joint tenancy changes the character of the ownership interest in the entire property into marital property, which is subject to division. *Trattles,* 126 Wis. 2d at 225, 376 N.W.2d at 383. Under sec. 700.17(2)(a), Stats., each joint tenant "has an equal interest in the whole property for the duration of the tenancy, irrespective of unequal contributions at its creation." When determining the character of an asset, the donative intent of the owner of the nonmarital property is an issue. *Brandt,* 145 Wis. 2d at 410–11, 427 N.W.2d at 132.

---

ties and their children. *Kuhlman,* 146 Wis. 2d at 592, 432 N.W.2d at 297.

Tracing pertains to the identity of the property, not its character. *Trattles,* 126 Wis. 2d at 227, 376 N.W.2d at 383. "Identity" addresses whether the nonmarital asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned—in other words, "traced." *See Brandt,* 145 Wis. 2d at 412, 427 N.W.2d at 132. Whether the person seeking to establish the character and identity of the property at issue has met the burden of proof is a question of law which we examine *de novo. Id.* at 408–09, 427 N.W.2d at 131.

## III. THE RESIDENCE

The first issue involves the residential property titled in Wesley's name where the spouses lived during most of their marriage. The house was acquired by Wesley before the determination date and before the marriage. Harold argues that the trial court wrongly classified the residence as marital property because Wesley solely owned it on the parties' determination date and paid the household expenses, and the spouses intended to keep their residences as solely owned property.

We begin with the presumption that the house is marital property. That basic presumption easily is rebutted, however, because the residence was acquired before the determination date. The secondary presumption—that the residence is deferred marital property—also is rebutted because the acquisition date preceded the date of the marriage as well.

The house is Wesley's predetermination date property because it was acquired before the determination date and before the marriage. As we have stated, the enactment of ch. 766, Stats., by itself does not alter the

classification and ownership rights of property acquired before the determination date. Section 766.31(8), Stats. Thus, unless the residence was somehow reclassified, it is nonmarital property.

Here, the trial court made no explicit finding regarding donative intent. It is evident, however, that the spouses meant to keep their respective properties separate. Both Christine and Wesley kept their respective residences titled in their own names. Christine conveyed her residence and her summer cottage to her daughters without notice to Wesley, explaining that she thought it unnecessary to consult him. Also, Christine herself testified that their property was kept separate throughout the marriage. We conclude, therefore, that the residence retained its character as nonmarital property.

The trial court implicitly determined that, through mixing, there was a change in the property's identity. Apparently relying on sec. 766.63(2), Stats., the trial court concluded that this real estate is marital property because there was

> no testimony that the property was solely maintained since the determination date with the decedent's own funds. The testimony is quite the contrary when Christine Lloyd testified that her funds were used to support her and the decedent and therefore maintaining this real estate where they resided for part of the marriage.

Under sec. 766.63(2), a marital property component in Wesley's house would be created if he *or* Christine applied labor or skill to the house, the labor was not reasonably compensated, and the property substantially appreciated as a result.

Christine did testify that she assumed the couple's food, clothing and shelter expenses. She also testified that there was no mixing of properties throughout the course of the marriage. Wesley's bank records, by contrast, indicate that utility bills and various miscellaneous household expenses were paid from his checking account.

Although the trial court's finding regarding the parties' relative contributions is not clearly erroneous, such a finding does not satisfy the legal standard set out in sec. 766.63(2), Stats., and thus does not support the court's conclusion that the residence has been reclassified as marital property. The finding does not establish that the applied efforts of either spouse were anything more than performance of usual and normal marital responsibilities. *See Haldemann v. Haldemann,* 145 Wis. 2d 296, 301–02, 426 N.W.2d 107, 109 (Ct. App. 1988).[7] Likewise, there is no evidence of substantial, or even any, appreciation to the property.

We therefore conclude that the residence is not marital property and reverse that portion of the judgment.

---

[7]*Haldemann v. Haldemann,* 145 Wis. 2d 296, 426 N.W.2d 107 (Ct. App. 1988), is a divorce case. *Haldemann* invokes sec. 766.63(2), Stats., however, in its discussion of appreciation in value of separate property due to the efforts and abilities of the nonowning spouse. *Haldemann,* 145 Wis. 2d at 300–02, 426 N.W.2d at 108–09. Thus, while the policies underlying chs. 766 and 767, Stats., may be different, we believe that the same legal standard of what constitutes sufficient effort or appreciation applies whether in the context of divorce or death.

## IV. BANK ACCOUNTS AND CERTIFICATES OF DEPOSIT

The second issue concerns the classification of thirty-seven of the bank accounts and CDs. Stripped to its essence, Harold's position is that regardless of whether a marital component was later added, whatever amounts were on deposit in Wesley's accounts on January 1, 1986 should be considered Wesley's solely owned property and should not be subject to Christine's elective rights.

Resolving the issue entails the onerous exercise of unraveling an accounting and historical snarl: some of the CDs were established and held in Wesley's name only; some in Wesley's and Harold's joint names; and some in Wesley's and another third party's joint names. To further complicate matters, Wesley at various times moved funds in and out of joint tenancy with Christine. In considering Harold's argument, it is critical to remember that except for property which is classified otherwise by ch. 766, Stats., *all* property of spouses, not just that acquired after the determination date or titled to both spouses, is marital property. Section 766.31(1), Stats. We commend the trial court on its efforts in this daunting task.

As we have stated, review of the trial court's tracing or commingling determinations presents a question of fact. *Brandt,* 145 Wis. 2d at 407, 427 N.W.2d at 130. We will not set aside those findings unless they are clearly erroneous. *Id.* Our task on appeal is not to independently perform a tracing exercise but to determine if the record supports the trial court's findings. *Id.* at 412, 427 N.W.2d at 133. We review independently, however, the determinations of whether the assets are or are not mari-

tal property. *See Wierman,* 130 Wis. 2d at 433, 387 N.W.2d at 748.

The accounts fall into several broad categories. The first category is composed of accounts established while the divorce was pending and in violation of a court order. The second category includes accounts held jointly with Harold; the third comprises accounts which at some point in their existence were held jointly with Christine; and the fourth is made up of accounts held in Wesley's name alone.

### A. Transfers in Violation of Court Order

The first category is composed of three accounts established while the divorce was pending.[8] The trial court termed these accounts "fraudulent" because they were established in violation of a court order. We agree that all are marital property because they were established after the determination date with funds not clearly shown to be nonmarital. Thus, the transfers also constituted a breach of the spousal duty of good faith. *See* sec. 766.15, Stats.

### B. Joint Accounts with Harold

At the time of Wesley's death, twenty-nine accounts were held in the joint names of Wesley and Harold.[9] The

---

[8]Farmers and Merchants CD Nos. 11859, 31572 and 32206 (an irrevocable casket trust).

[9]There are twenty-nine accounts in this category, four of which are not challenged on this appeal and two of which were discussed above in the first category. The remaining twenty-three accounts are First National Bank CD Nos. 8425682, 8425685, 8425984 and 8426261; Mutual Savings & Loan Account Nos. 80620015570, 80620015588, 80620015596, 80620015604, 80620015612, 80620015620, 80620015638 and 80620015646; and

trial court concluded that twenty-three of these accounts were marital property. On some of the twenty-three accounts, the trial court made a finding that there was a "substantial increase in principal since the determination date." On most of them, however, the court stated only that the particular account is marital property "because there was insufficient tracing for the Court to find otherwise," and followed this legal conclusion with a cite to various exhibits.

Where we are faced with inadequate findings, we may examine the record anew to see if the trial court's conclusion is supported by a preponderance of the evidence. *See In re T.R.M.*, 100 Wis. 2d 681, 688, 303 N.W.2d 581, 583 (1981). We reverse as to certain of the accounts because we conclude that the legal conclusion was not so supported.

A joint account is an account, other than a marital account, which is payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship. Section 705.01(4), Stats. At the death of a party to the account, the account presumptively belongs to the surviving party or parties. Section 705.04(1), Stats. If marital property is used to fund the account, it is a gift to the third party which is subject to the nontenant spouse's right of reimbursement. *See* secs. 705.04(4) and 766.70(6), Stats.

We cite as an example First National Bank CD No. 8425685.[10] The trial court determined that this CD was marital property because "funds [were] added to the principal since the determination date and there was

---

Farmers and Merchants Bank Account Nos. 31285, 31314, 31461, 31476, 31567, 31568, 31573, 31585, 31993, 32041 and 32110.

[10]We address only a representative example from these various groups so as to eliminate a repetitious recitation of the law.

insufficient tracing for the Court to find otherwise (see Exhibit 30)." Exhibit 30 consists of a series of photocopies of the CD beginning when it was established on January 11, 1977 in Wesley's sole name in the amount of $11,342.68. The balance was unchanged on May 14, 1979, the wedding date. The exhibit shows that the CD was transferred into joint tenancy with Harold on January 11, 1982 in the amount of $13,923.71. The exhibit also shows that the balance was $18,440.68 on January 1, 1986 and $20,687.96 at Wesley's death.

This account clearly was created with Wesley's solely owned property. It is not part of the augmented marital property estate because it was transferred into a joint account with Harold before April 4, 1984. *See* sec. 861.05(4), Stats. In ch. 766, Stats., language, the account is predetermination date property because it was funded with Wesley's solely owned assets before the marriage and before the determination date. Any interest or unexplained additions to the principal between the date of the marriage and the determination date are deferred marital property, however, just as any interest or unexplained additions to the principal between the determination date and Wesley's death are marital property. *See* secs. 766.31(4) and 851.055, Stats.

We conclude that $11,342.68, the amount on deposit on the marriage date, is traceable to Wesley's nonmarital property. Harold did not successfully show that additions to the principal also were funded by Wesley's solely owned property, however. Consequently, $9,345.28 (the difference between the balance on the date of death and the balance on the date of the marriage) is either marital or deferred marital property in which Christine has a one-half interest.

266

A decision of the Texas Supreme Court supports our conclusion. In *McKinley v. McKinley*, 496 S.W.2d 540 (Tex. 1973), a widow sought a declaratory judgment that two savings certificates in her husband's estate were community property. One certificate was in the amount of $10,400, the other in the amount of $16,000.

The portion of the $10,400 certificate originally on deposit at the time of the marriage was held to be separate property. It was traced to a $9,500 savings account the deceased husband had prior to January 15, 1965, the date of the marriage. The only deposits made during the marriage consisted of interest earned on the account balance, increasing it from $9,500 to $10,453.81 on December 31, 1967. No withdrawals were made between January 5, 1966 and January 2, 1968, when $10,400 was withdrawn and used to purchase a new certificate in the amount of $10,400. The new certificate remained "on account and untouched" until the husband died on October 15, 1970. *Id.* at 543. The supreme court concluded that direct tracing identified $9,500 of the $10,400 certificate as the decedent's separate property. *Id.*

The $16,000 certificate, on the other hand, was held to be community property. The account was established through the consolidation of three smaller certificates, two of which the spouses held in joint tenancy, and the third of which had undergone numerous deposits and withdrawals. Only some of the transactions were attributable to interest; the rest were unexplained. The court stated that because there was no evidence to trace the separate funds initially on deposit in the account, any conclusion about the property's status "would require surmise and speculation." *Id.* at 543–44. The court held the entire $16,000 to be community property. *Id.* at 544.

## C. Joint Accounts with Christine

The accounts in the third category at some point in their existence were held jointly by the spouses.[11] We affirm as to those because we agree that by commingling the funds in that fashion, the entire account became marital property.

At Wesley's death, no accounts remained in his and Christine's joint names.[12] Wesley either had created new accounts using the funds from those joint accounts, or had renewed the CDs in his name alone or in his and Harold's names. These actions, however, did not serve to reclassify the funds as nonmarital property. The law in Wisconsin used to be that withdrawal of more than an equal share of a joint account without the co-tenant's consent severed the tenancy but did not destroy the co-tenant's joint and equal interest. *See Estate of Schley,* 271 Wis. 74, 81, 72 N.W.2d 767, 770 (1955). The other

---

[11]First National Bank CD Nos. 8426675, 8422870 and 8425682; Mutual Savings & Loan Account Nos. 80620015570 and 80620015596; and Farmers and Merchants Bank Account Nos. 31285, 31314, 31585 and 32041 were determined to be marital property because at some point they were held jointly by Wesley and Christine. The trial court determined that First National Bank CD No. 8425984 was marital property for the same reason. Although the record does not support the finding of a joint tenancy between Wesley and Christine on the latter account, the CD is marital property nonetheless because Harold did not trace it to a nonmarital property source.

[12]If any of the accounts still had been in joint tenancy with Christine when Wesley died, Christine would have been entitled to more than a fifty percent marital property interest. She would have had a right of survivorship and would have received the entire property interest. *See Bonnell v. Bonnell,* 117 Wis. 2d 241, 247–48, 344 N.W.2d 123, 127 (1984).

party thus was permitted to trace the withdrawn funds into subsequently acquired savings certificates. *Id.*

The court of appeals held recently, however, that sec. 705.03(1), Stats., has abrogated the doctrine of severance and tracing for joint savings accounts. *In re Frank,* 140 Wis. 2d 429, 433, 410 N.W.2d 621, 623 (Ct. App. 1987). In a nonmarital property context, the court held that sec. 705.03(1) bars any inquiry into the application of funds withdrawn from a joint account by either of the joint parties because application of the doctrine defeats the intent of the parties in establishing a joint account in the first instance. *Frank,* 140 Wis. 2d at 433, 410 N.W.2d at 623. The court explained that inquiry into use of the funds upon the death of a co-tenant is barred in the same manner as is inquiry into their use while both parties are alive. *Id.*

That said, we nonetheless conclude that having once established joint accounts with Christine, the marital property law endows Christine with rights to those accounts she otherwise might not have. The transfer of separately owned property into joint tenancy changes the character of the ownership interest in the entire property into marital property. *Fowler v. Fowler,* 158 Wis. 2d 508, 518, 463 N.W.2d 370, 373 (Ct. App. 1990). Accordingly, once a joint account or joint tenancy was created between Wesley and Christine, each had an equal, undifferentiated interest in the whole of the property. *Bonnell,* 117 Wis. 2d at 247, 344 N.W.2d at 127. The accounts so treated no longer were solely Wesley's; rather, they became a single estate owned by both Wesley and Christine. *See id.* at 247, 344 N.W.2d at 126–27.

Nonmarital property must retain both its character and identity to preserve its exempt status. *Brandt,* 145 Wis. 2d at 410, 427 N.W.2d at 131. While placing sepa-

rate property into joint tenancy with a spouse converts the entire amount to marital property, we do not believe the opposite is true. Thus, Wesley did not change the character of the accounts by taking them out of joint status with Christine. Having determined that a joint account between spouses serves to change the character of the account, we need not address the identity issue.

We hold, therefore, that once the accounts were held jointly with Christine, the accounts became either marital or deferred marital property. Thus, the new or renewed accounts were funded with either marital or deferred marital property. Consequently, regardless of how those new accounts are titled, the funds in them are marital or deferred marital property.[13]

### D. Accounts Titled in Wesley's Name

A number of accounts were titled in Wesley's name alone at the time of his death. The trial court concluded that the post-determination date addition of "interest or marital component" and insufficient subsequent tracing converted the entire account to marital property. We disagree that this conclusion necessarily follows. Commingling, in and of itself, is not necessarily fatal to the nonmarital status of an asset. *See Brandt,* 145 Wis. 2d at 412, 427 N.W.2d at 132. The critical inquiry is whether, despite the commingling, the nonmarital component nonetheless can be identified and valued. *Id.* We reverse as to four of the accounts.[14]

---

[13]Any joint tenancies established with Harold after April 4, 1984 would be part of the augmented marital property estate anyway. Section 861.05(4), Stats.

[14]First National Bank CD Nos. 8426564, 8426329, 8426247 and 8422681.

We use as an example First National Bank CD No. 8426247. This account was established in February 1977 with Wesley's separate property. The trial court concluded that "because it has had interest or marital component being added to it since the determination date and there was insufficient tracing to find otherwise," the entire amount was marital property. Whether tracing is sufficient is another way of asking whether the challenger has met his or her burden of proof. That is a question of law. *Id.* at 409, 427 N.W.2d at 131.

We conclude that the account—principal and interest—was Wesley's separate property until the marriage date. Then from that time until the determination date, the interest it bore was deferred marital property, as was any increase in the principal not clearly identified as coming from Wesley's separate property. Similarly, from the determination date until Wesley's death, any unexplained increase in principal and all interest are marital property.

The record does not indicate the value of the CD on May 14, 1979, and we remand for that finding. If it can be shown, that much of the account is Wesley's separate property; the rest is either marital property or deferred marital property. If that value cannot be shown, then we agree with the result reached by the trial court because the marital and nonmarital components will have been too commingled to permit sufficient tracing.

No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.