IN the MATTER OF the ESTATE OF Gloria L. BILLE, Deceased:

John K. BILLE, Appellant,

v.

Christine ZURAFF, Personal Representative of the Estate, Respondent.

Court of Appeals

*No. 95–0007. Submitted on briefs August 31, 1995.—Decided December 27, 1995.*

(Also reported in 543 N.W.2d 568.)

On behalf of the appellant, the cause was submitted on the briefs of *Gordon S. Johnson, Jr.* of *Gonyo & Johnson* of Berlin.

On behalf of the respondent, the cause was submitted on the brief of *John S. Schlom* of Waupun.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J.   John K. Bille appeals from the denial of his petition to reclassify the residence of his deceased spouse, Gloria L. Bille, as marital property under the provisions of ch. 766, STATS., Wisconsin's Uniform Marital Property Act (UMPA). In the alternative, John requests reimbursement for contributions made to the residence.

The probate court granted John's reimbursement request in part and denied it in part. John appeals from the denial of his petition to reclassify the residence as marital property and the partial denial of his reimbursement request.[1] Because application of the relevant UMPA provisions support the probate court denials, we affirm.

## BACKGROUND

The facts are undisputed. Gloria married John on December 21, 1984, and died on February 7, 1993. Gloria and John were domiciled in Wisconsin throughout their marriage and never entered into a prenuptial, postnuptial or marital property agreement. Gloria and John's UMPA determination date is January 1, 1986.[2]

In 1982, two years prior to her marriage to John, Gloria borrowed $23,000 from her grandparents (the Blake loan) and purchased a residence in Fond du Lac, Wisconsin. Gloria and John lived there during the marriage and paid the mortgage payments, real estate taxes and property insurance premiums from marital income and assets. The fair market value of the home in 1993 was $64,619. During the marriage, the parties used Gloria's residence to secure certain financial transactions.

On September 11, 1986, Gloria and John borrowed $40,000 using the residence as collateral. The $20,231.25 balance of the Blake loan was satisfied from the loan proceeds on September 17, 1986. The remain-

[1] Gloria's estate did not cross-appeal from the probate court's partial reimbursement order.

[2] The determination date is the date on which the last of the following three events occurs: (1) marriage (12/21/84); (2) both spouses are domiciled in Wisconsin (12/21/84); or (3) January 1, 1986. *See* § 766.01(5), STATS.

ing funds were used for marital purposes, including loan expenses.

On December 12, 1987, a second marital loan of $8688.82 was obtained with the residence as security, and the proceeds were used for marital purposes. On April 22, 1988, a final mortgage loan of $48,000 was obtained to pay off the prior two loan balances of $47,397.88, with the remaining amount being applied to taxes and loan expenses.

Gloria and John obtained a joint credit life insurance policy to cover any balance owing on the 1988 mortgage note if either of them died. The policy premium was paid out of marital property, and at Gloria's death the policy satisfied the 1988 loan balance of $46,457.02. Gloria's will then disposed of the Fond du Lac residence as nonmarital property, leaving John a life estate in the property unless he remarried. John remarried on May 27, 1994.

## RESIDENCE RECLASSIFICATION

John's initial request is that Gloria's residence be reclassified as marital property. If the residence were marital property, Gloria could dispose of only one-half interest upon her death. *See Lloyd v. Lloyd,* 170 Wis. 2d 240, 252, 487 N.W.2d 647, 651 (Ct. App. 1992). John would then be entitled to the other one-half interest as marital property. *See* §§ 766.31(3), 861.01, STATS. If the residence remains nonmarital property, Gloria's will controls and John receives only the conditional life interest in the residence that terminated upon his remarriage. *See Lloyd,* 170 Wis. 2d at 252, 487 N.W.2d at 651.

This issue requires application of the marital property law to undisputed facts, which presents a question

of law that we review de novo. *See id.* Classification of the residence determines whether Gloria could freely dispose of the residence as nonmarital property. *See id.* We are not bound by the trial court's legal conclusions or by legal conclusions the trial court has denominated factual findings. *Id.*

Ordinarily, a UMPA classification discussion begins with the presumption that the residence is marital property. *See* § 766.31(1), (2), STATS. However, John's argument is based on a reclassification claim—this necessarily concedes that Gloria's residence is nonmarital property. *See Kobylski v. Hellstern,* 178 Wis. 2d 158, 172, 503 N.W.2d 369, 374 (Ct. App. 1993).[3]

John proposes two bases upon which to reclassify Gloria's residence. As one theory, John contends that Gloria's nonmarital residence is classifiable as marital property because marital property was "mixed" with the residence property. Alternatively, he argues that the satisfaction of the original mortgage through the marital loan should be recognized under the UMPA as an "acquisition" of nonmarital property through the reduction of indebtedness. Because we conclude that the marital property classification issue is disposed of under a mixed property analysis, we address that issue first.

---

[3] John's concession is consistent with a UMPA analysis. Because Gloria's residence is Gloria's predetermination-date property and was acquired prior to her marriage to John, both the basic presumption that the residence was marital property and the secondary presumption that the residence was deferred marital property are rebutted. Unless the residence is reclassified, it remains nonmarital property. *See Lloyd v. Lloyd,* 170 Wis. 2d 240, 260-61, 487 N.W.2d 647, 655 (Ct. App. 1992).

*Mixed Property Analysis*

■

Classification of nonmarital property as marital property through mixing is governed by § 766.63(1), STATS. That section provides:

> Except as provided otherwise in ss. 766.61 and 766.62, mixing marital property with property other than marital property reclassifies the other property to marital property unless the component of the mixed property which is not marital property can be traced.

The burden to establish the requisite mixing of marital with nonmarital property is on the claimant.[4] *Kobylski,* 178 Wis. 2d at 173, 503 N.W.2d at 374. The nonmarital asset is reclassified as marital property *"unless* the component of the mixed property which is not marital property can be traced." Section 766.63(1) (emphasis added); *see Kobylski,* 178 Wis. 2d at 173, 503 N.W.2d at 374. The estate does not contest that John has met his burden to show the mixing of marital property with the nonmarital residence. The issue is whether the nonmarital residence can be traced.

■

The burden of establishing tracing is on the estate as the party seeking to avoid reclassification of the residence as marital property. *See id.* at 173, 503 N.W.2d at 374. The record here, however, reveals the following concession by John concerning the estate's § 766.63(1), STATS., tracing burden:

---

[4] The term "property other than marital property," used in § 766.63(1), STATS., is analogous to the term "nonmarital property." *See Lloyd,* 170 Wis. 2d at 259, 487 N.W.2d at 654.

MR. SCHOLM [estate counsel]:  . . . There is no question about the tracing here. The stipulations that are filed show there is tracing. Mr. Hobbs admits there is tracing in his Petition.

MR. HOBBS [John's counsel]:  That is correct, I do admit that . . . the tracing is possible here. *But the only effect that that has is to prevent a reclassification of that house to marital property.* [Emphasis added.]

John argues on appeal that his tracing concession is "incorrect as a matter of law" because while he has met his burden of establishing that marital property was mixed with nonmarital property, the estate has failed to meet its tracing burden. John argues that the estate has failed to provide evidence of the amount of mortgage payments that he paid.[5]

■

John has a basic misunderstanding of the § 766.63(1), STATS., tracing requirement. There is no requirement that marital property be traced, and John does not cite to any authority for that proposition. If a nonmarital asset is mixed with marital property, tracing the nonmarital property to its nonmarital source preserves the traced component's nonmarital property character. *Lloyd,* 170 Wis. 2d at 257, 487 N.W.2d at 653. There is no requirement that the estate trace the mixing of marital assets with the nonmarital residence. John's concession that Gloria's residence could be traced as nonmarital property was supported by the

---

[5] John argues that because "the reduction of indebtedness through marital funds establishes acquisition and/or mixing [under § 766.01(1), STATS.], likewise the payment of interest on such indebtedness does also." Therefore, he contends that his mortgage payments on the property establish a mixing that has not been traced.

evidence. It was unaffected by any failure of the estate to trace the mixed marital assets.

█

We conclude that John's tracing concession was not incorrect as a matter of law. The probate court was correct in holding that:

> John Bille's claim that the residence has been transformed into marital property cannot be sustained as . . . § 766.63(1) precludes reclassification of nonmarital property to marital property when tracing can be performed.

### Life Insurance Exception

Although we conclude that the tracing of the nonmarital property properly denies John's contention that the residence should be reclassified, we note that there are two exceptions to the application of § 766.63(1), STATS.[6] The exception we address, § 766.61, STATS., relates to the classification of life insurance policies and proceeds under the UMPA.

While John does not specifically cite to this exception or argue that it supports his reclassification claim, the marital indebtedness secured by the residence was satisfied from the proceeds of a policy on Gloria's life. In the interest of a thorough analysis, we will address the validity of the insurance exception to John's claim.

The policy on Gloria's life related directly to the 1988 loan and was specifically intended to satisfy the 1988 marital indebtedness to Fox Valley Savings and Loan Association, the loan creditor. Section § 766.61(4), STATS., specifies:

---

[6] One of the exceptions, § 766.62, STATS., refers to the classification of. deferred employment benefits and is not relevant here.

878

> This section does not affect a creditor's interest in the ownership interest or proceeds of a policy assigned to the creditor as security or payable to the creditor.

All of the proceeds were paid to Fox Valley.[7] John was not entitled to any policy proceeds, only to the relief the proceeds provided from the marital debt.

██

We conclude that because all of the insurance policy proceeds on Gloria's life were payable to a creditor in satisfaction of the marital debt, the § 766.63, STATS., exception is irrelevant to John's reclassification claim.

### Acquisition Analysis

As an alternative to reclassification based upon § 766.63(1), STATS., John contends that the marital estate acquired Gloria's residence through the 1986 marital loan, which was used in part to pay off the mortgage (the Blake loan). He bases this argument on § 766.01, STATS., which reads:

> **(1)** "Acquiring" property includes reducing indebtedness on encumbered property and obtaining a lien on or security interest in property.

Acquisition of an asset involves either the payment of money, the exchange of another asset or the incurrence of an obligation. *Lloyd,* 170 Wis. 2d at 257, 487 N.W.2d at 653. John claims that the use of marital assets to reduce or eliminate the residence indebtedness is an "acquisition" cognizable under the UMPA because of the above definition.

---

[7] In his stipulation of fact, John concedes that the total insurance check in the amount of $46,671.02 was paid to the creditor of the marital note, Fox Valley.

In furtherance of this acquisition claim, John theorizes that § 766.01(1), STATS., requires a changing of his and Gloria's determination date from January 1, 1986, to an "acquisition date" (or dates) which then controls the residence classification. In his brief, he wrote:

> Herein, that acquisition date would be the date the premarital mortgage was paid off. It could also be an alternatively later date for the payoff of the succeeding mortgages. Therefore, the determination date could be as early as September 11, 1986, with respect to the $20,231.25 mortgage, or as late as Gloria's date of death with respect to the $46,457.02 mortgage.

We disagree that § 766.01(1), STATS., usurps a valid § 766.63(1), STATS., nonmarital component retention analysis or operates in the manner suggested by John. The marital property John wants to use to "acquire" (reduce the indebtedness on) the residence is the same marital property (payment of money) that he asserts was "mixed" with the residence property in the § 766.63(1) analysis.

Because mixing marital property of any type (mortgage payments, improvements, etc.) with traceable nonmarital property fails to change the traced component's nonmarital property character, *see Lloyd,* 170 Wis. 2d at 257, 487 N.W.2d at 653, John is foreclosed by § 766.63(1), STATS., from his theory of his acquisition of Gloria's residence. We next proceed to John's reimbursement claim.

## REIMBURSEMENT CLAIM

The second issue John raises concerns the partial denial of his reimbursement request. John contends

880

that the trial court erred in not giving him credit for all physical improvements made to Gloria's residence.

These claims require the application of the statutory provisions of § 766.63(2), STATS., and an examination of the *Kobylski* enhanced property value determination.[8] The application of a statute to a particular set of facts is a question of law, and the court of appeals decides the issue independent of the probate court's determination. *See Artis-Wergin v. Artis-Wergin,* 151 Wis. 2d 445, 452, 444 N.W.2d 750, 753 (Ct. App. 1989). Before analyzing the validity of John's reimbursement claim, we begin with the trial court's determination that John's recovery of the marital portion of the Blake loan payment was now time barred.

### UMPA *Statutory Remedy*

While John did not assert a § 766.70, STATS., claim,[9] the estate contends that John had a remedy under § 766.70(5) to recover his marital interest in the $20,231.25 Blake loan payment and failed to present the claim timely. Section 766.70(5) states in relevant part:

---

[8] In *Kobylski v. Hellstern*, 178 Wis. 2d 158, 180, 503 N.W.2d 369, 377 (Ct. App. 1993), this court held that spousal reimbursement for marital funds contributed to the improvement of nonmarital property should be based on any enhancement to the property's value which occurred as a direct result of those contributions.

[9] A request of the court "to order that he . . . receive . . . marital property equal in value to the marital property used to satisfy the obligations of [Gloria]" would be contrary to John's claim that Gloria's residence be classified as marital property. *See* § 766.70(5), STATS.

When marital property is used to satisfy an obligation . . . the nonobligated spouse may request the court to order that he or she receive as individual property marital property equal in value to the marital property used to satisfy the obligations . . . subject to equitable considerations. *No person may bring an action under this subsection later than one year after the obligation is satisfied.* [Emphasis added.]

The probate court perceived John's claim as a valid § 766.70(5), STATS., request. This was based upon the satisfaction of Gloria's Blake loan obligation with marital property (the 1986 loan obligation). However, the court granted the estate's motion to preclude a Blake loan value reimbursement claim as untimely. Because the Blake loan balance was satisfied in September 1986, John had until September 1987 to invoke his § 766.70(5) remedy. He made no request concerning individual credit for the satisfaction of the Blake loan until after Gloria's death in 1993.

We conclude that the probate court's application of the § 766.70(5), STATS., one-year time limitation to John's marital reimbursement claim for the Blake loan was proper.

We now address John's contentions that in the absence of reclassification of the residence, he is entitled to additional reimbursements for improvements made to Gloria's residence from marital property.[10]

---

[10] John suggests in his second statement of issues that the marital estate should be reimbursed for "all of the mortgage payments." That issue was not presented to or addressed by the trial court. As a general rule, we will not decide a matter not presented to the trial court. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 125-26, 334 N.W.2d 580, 587 (Ct. App. 1983). In addi-

John does not specifically identify his reimbursement claim as being based upon a § 766.63(2), STATS., attribution claim or upon a *Kobylski* enhanced value analysis. We address John's reimbursement claim as including both.

*Mixed Industry Attribution and Enhanced Value Claims*

John submitted a total reimbursement claim of $14,962.75, itemized as follows:

| Date | Improvements | Cost |
|------|-------------|------|
| 11/18/86 | New 2½ car garage and patio | $ 2,685.00 |
| 9/23/88 | Replace eave trough | 279.75 |
| 1988 | Replace overhang (soffits) | 820.00 |
| 8/88 | Replace furnace | 1,596.00 |
| 8/87 | Install central air conditioning | 1,200.00 |
| 6/89 | Replace windows | 6,400.00 |
| 1988 | Paint interior and exterior | 525.00 |
| 9/92 | Remodel bathroom | 500.00 |
| 4/10/90 | Replace tile and linoleum in kitchen and hallway | 957.00 |
| | | $14,962.75 |

The probate court found that the marital estate was entitled to reimbursement for the garage and the central air conditioning in the total amount of $2615.90 and ordered that John be awarded $1307.95 as his

---

tion, John's brief does not address mortgage payments. We will not consider an argument that is inadequately briefed. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

marital share.[11] Neither John nor the estate contests those findings. John appeals, however, from the probate court's denial of the balance of his reimbursement claim in the amount of $11,077.75.[12]

### (1) Mixed Industry Attribution Claim

We look to § 766.63(2), STATS., to resolve this claim. Section 766.63(2) provides:

> Application by one spouse of substantial labor, effort, inventiveness, physical or intellectual skill, creativity or managerial activity to either spouse's property other than marital property creates marital property attributable to that application if both of the following apply:
> (a) Reasonable compensation is not received for the application.
> (b) Substantial appreciation of the property results from the application.

Section 766.63(2), STATS., contemplates the creation of a marital property interest attributable to a spouse's contribution of uncompensated industry to the other spouse's nonmarital property. *Kobylski,* 178 Wis. 2d at 182, 503 N.W.2d at 378. In an "industry mixing" claim, the burden of proof is with the claimant, in this

---

[11] John is entitled to only one-half of the reimbursement amount to which the marital estate is entitled because Gloria may freely dispose of her one-half interest in each marital property item. *See Lloyd,* 170 Wis. 2d at 252, 487 N.W.2d at 651.

[12] The probate court found that the garage and the central air conditioning improvements had a value of $2615.90—$1269.10 less than the $3885 claimed by John in his petition. Excluding the garage and the central air conditioning, the remaining itemized claims total $11,077.75.

case John, to establish his or her contributions. *Id.* at 184, 503 N.W.2d at 378-79.

██

In order to meet his burden, John must show that: (1) his industry created a marital property component in Gloria's nonmarital residence by applying substantial labor or skill to the residence, (2) he received no reasonable compensation for his industry, and (3) the efforts produced a substantial appreciation of the residence.

██

The only evidence John submits to support his reimbursement claim is the stipulation as to the value of the improvements made to the residence. He presents no evidence that he applied his own labor, efforts, inventiveness, physical or intellectual skill, creativity or management activity to the residence. Because John fails to meet the threshold burden of the application of the requisite industry on his part, his § 766.63(2), STATS., claim must fail.

### (2)    Enhanced Value Claim

We also examine John's claim by applying the enhanced value rule of reimbursement created by our holding in *Kobylski,* 178 Wis. 2d at 180, 503 N.W.2d at 377. There we held:

> Where marital funds are used to improve the separate property of one of the spouses, a claim for reimbursement exists in favor of the marital estate measured by the property's enhanced value attributable to the improvements, not the amount of marital funds actually expended. Thus, expenditures that relate merely to the maintenance of the property or which do not enhance the property's value are not to be considered. The party seeking

such reimbursement has the burden of demonstrating that the improvement funds expended have enhanced the value of the spouse's separate property and the amount of enhancement.

*Id.* (footnote omitted).

Because John is seeking reimbursement, he has the burden of demonstrating any increase in property value due to his monetary contributions. *See id.* at 181, 503 N.W.2d at 377. The only evidence presented concerning the enhancement of the value of the residence during the marriage was provided in the parties' stipulation. The stipulation was that the assessed value of the residence increased from $52,000 in 1986 to $54,500 in 1993, and that the fair market value (determined by using the taxing authority ratio) increased from $50,000 in 1986 to $64,619 in 1993.

Because John presents no additional evidence or records in support of his claim that the enhanced value of Gloria's residence was due to the remaining expenditures, he has failed to meet his burden. We are satisfied that John is not entitled to any further reimbursements from the estate under either a § 766.63, STATS., mixed industry or a *Kobylski* enhanced value analysis.

We conclude that the trial court properly denied the reclassification of Gloria's residence as marital property, as well as John's alternate claim for additional reimbursement.

*By the Court.*—Order affirmed.