KUBLY and wife, Appellants, v. DEPARTMENT OF REVENUE, Respondent.

*No. 33 (1974). Submitted under sec. (Rule) 251.54 September 9, 1975.—Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 369.)

For the appellants the cause was submitted on the brief of *Donald S. Eisenberg, Jerome S. Schmidt,* and *Donald S. Eisenberg & Associates,* all of Madison.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *E. Weston Wood,* assistant attorney general.

CONNOR T. HANSEN, J. The case concerns the application of sec. 77.51 (10) (a), Stats., as amended, effective September 1, 1969.

The statute, as amended, provides:

"(10) 'Occasional sales' includes:
"(a) Isolated and sporadic sales of tangible personal property or taxable services where the infrequency, in relation to the other circumstances, including the sales price and the gross profit, support the inference that the seller is not pursuing a vocation, occupation or business or a partial vocation or occupation or part-time business as a vendor of personal property or taxable services. *No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit."* (Emphasis added.)

The additional sales tax and interest assessment in the amount of $2,214.07 made against the taxpayers by the department arises out of the sale of a restaurant.

The determinative issue on this appeal is: Was the decision of the tax appeals commission that the sale of the restaurant was not completed until after September 1, 1969, supported by substantial evidence? The trial court determined that it was, and we agree.

The essential facts appear to be uncontroverted. The offer to purchase was accepted by the taxpayers on August 11, 1969, and in pertinent part provided:

"The buyer's obligation to conclude this transaction is conditioned upon the consummation of the following:
"This offer to Purchase is contingent upon the following:
"...
"2—Sellers Licenses (restaurant, bar, etc.) shall be transferred to Purchasers so as to enable them to maintain and operate the subject business.
"...
"Should any of the above contingencies not be fulfilled this offer to purchase shall be declared of no effect and all earnest monies returned to the purchasers."

On August 27, 1969, the purchaser applied for his operator's licenses, at which time the parties were "led to believe" by the city clerk that there would be no problem in the transfer of the licenses. On August 29, 1969, taxpayers moved off the premises and the taxpayers and purchasers began an inventory which continued into September. The liquor license requested by the purchaser was approved on September 16th, and delivered to the purchaser on September 17, 1969, following the requisite approval at two city council meetings. The sale was closed by execution of a land contract on September 18, 1969. On the taxpayers' final sales tax form, the date of sale to purchaser was stated as September 20, 1969. The purchaser applied for a seller's permit to operate the restaurant on September 19, 1969, and on the application indicated September 19, 1969, as the first date taxable sales in the business were to be made by him.

The taxpayers contend that for the purposes of sec. 77.51 (10) (a), Stats., the business was sold when the offer to purchase was accepted on August 11, 1969. The department has taken the position that the business was sold in mid-September after the licenses had been transferred and the land contract executed. The taxpayers assert the contingency regarding the transfer of

the licenses was merely a circumstance or formality relating to the sale. On the other hand, the department claims the transfer of the licenses was a condition precedent to the sale. We agree with the determination of the circuit court that the transfer of the licenses was in fact a condition precedent. Relying on *Mueller v. Novelty Dye Works* (1956), 273 Wis. 501, 505, 78 N. W. 2d 881, taxpayers assert that all events after the signing of the agreement relate back to that date. *Mueller* did not involve a condition precedent and basically concerned the rights of a third-party judgment creditor against the vendor. The case has no application to the offer in the instant case, which was subject to a condition precedent that had not been fulfilled on September 1, 1969. Likewise, *Scheer v. Weis* (1961), 13 Wis. 2d 408, 108 N. W. 2d 523, did not involve a condition precedent. In *Scheer,* the equitable owner under the contract to purchase was designated as the owner for the purposes of applying for a building permit.

In *Locke v. Bort* (1960), 10 Wis. 2d 585, 588, 589, 103 N. W. 2d 555, this court determined that a condition set forth in an offer to purchase constituted a condition precedent, and in arriving at that conclusion stated:

"Restatement, 1 Contracts, p. 359, sec. 250 (a), recognizes conditions precedent in contract law, and states that, when such a condition is provided, the fact upon which the condition is based must occur 'before a duty of immediate performance of a promise arises,' unless the same has been excused. The insertion of a condition precedent in a contract does not render the same void but only delays the enforceability of the contract until the condition precedent has taken place. *Biggs v. Bernard* (1954), 98 Ohio App. 451, 130 N. E. (2d) 152, 156.

"In determining whether the instant clause constitutes a condition precedent to Bort's obligation to pay the purchase price 'the essential thing is for the court to look at the contract from the standpoint of the parties at the time they executed it, and the purpose they had in view in doing so.' *Hawkins & Chamberlain v. Mathews* (1932),

242 Ky. 732, 47 S. W. (2d) 547, 548. 3 Williston, Contracts (rev. ed.), p. 2246, sec. 799, states such principle as follows:

"'In each case, the intention of the parties to make the debt contingent or otherwise, must be gathered from the language used, the situation of the parties, and the subject matter of the contract, as presented by the evidence.'"[1]

The license transfer clause in the agreement here under consideration was a condition precedent for the benefit of the purchasers. The condition was not fulfilled until mid-September after which the land contract was executed and the purchasers became the owners. The taxpayers were the owners of the property on September 1, 1969, at which time the amendment to sec. 77.51 (10) (a), Stats., became effective.

The taxpayers also argue that the act of the purchasers in entering into possession of the premises on August 29, 1969, constituted a waiver of the condition. This contention was made in circuit court and rejected on the basis. that it was unreasonable to interpret the purchaser's action as a waiver, since the lack of a liquor license would be so obviously detrimental to them. This is a reasonable conclusion, especially in view of the fact that the contingencies were included in the offer to purchase, and the land contract was not signed until the condition had been satisfied by the transfer of the licenses.

The taxpayers further assert that the department cannot rest its tax claim on the right of a third-party purchaser to invalidate the contract. Here the department is not relying on the condition to rescind the contract. Rather, the question is one of the application of the tax law to the facts. Whether the condition was ultimately fulfilled, or might have been waived or otherwise adjusted, is not decisive. The fact that the condition existed on September 1, 1969, and had not been fulfilled, is the relevant element.

[1] *See:* 3A Corbin, *Contracts* (1960), p. 16, sec. 628.

We are of the opinion that the decision of the commission is supported by substantial evidence in view of the entire record as submitted. *Milwaukee v. Wisconsin Employment Relations Comm.* (1969), 43 Wis. 2d 596, 168 N. W. 2d 809. The judgment is affirmed.

*By the Court.*—Judgment affirmed.