IN RE the ESTATE OF Genevieve KOBYLSKI, a/k/a
Genevieve Hellstern:

ESTATE OF Genevieve KOBYLSKI, a/k/a/ Genevieve Hell-
stern, Appellant,

v.

Geza HELLSTERN, Respondent.

Court of Appeals

*No. 92–2332. Submitted on briefs February 11,
1993.—Decided June 30, 1993.*

(Also reported in 503 N.W.2d 369.)

160

On behalf of the appellant, the cause was submitted on the briefs of *Nathaniel S. Lepp* of *Lepp & Lingle, S.C.* of Kenosha.

On behalf of the respondent, the cause was submitted on the brief of *Timothy P. Swatek* of *Allen, Harrison, Williams, McDonell & Swatek* of Lake Geneva.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. The principal issues on this appeal concern the "mixed property" provisions of sec. 766.63, Stats., of Wisconsin's Marital Property Act (MPA). Genevieve Hellstern's estate appeals from a judgment in favor of Genevieve's surviving husband, Geza Hellstern. The estate challenges the probate court's determination that a residence, titled in Genevieve's name and brought to the marriage by her, was reclassified to marital property pursuant to sec. 766.63 of the MPA. The estate also challenges the probate court's determination that Geza is not liable for the unpaid property taxes on the residence or for Genevieve's loan to him during the marriage for an automobile.

We reverse the probate court's ruling that the residence was reclassified to marital property and we remand for further proceedings on this issue. We also reverse and remand the court's ruling that Geza is not liable to the estate for the unpaid property taxes. We affirm the court's ruling that Geza is not liable to the estate for the automobile loan.

## I. FACTS

Genevieve, age 58, and Geza, age 71, married on February 20, 1982. At that time, both were widowed

and had children from their prior marriages. Their marriage produced no children.

At the time of the marriage, Genevieve owned a residence where she and her first husband had lived and raised their children. Genevieve and Geza lived in this residence for the duration of their marriage. Genevieve retained title to the property in her own name. During the marriage, Genevieve and Geza made several improvements to the residence that were paid for by funds from their joint checking and savings accounts. They also used these accounts to pay for property taxes, utilities, insurance and other household expenses. Additionally, Geza painted the interior and exterior of the residence, assisted Genevieve's son in enlarging the one-car garage, and did the yard work.

In addition to the residence, Genevieve brought to the marriage three certificates of deposit (CD's) valued at $10,000 each. Genevieve cashed one of the CD's during the marriage and later deposited the funds into a joint NOW account; the additional two CD's remained titled solely in Genevieve's name. In 1988, the spouses used $9000 from the joint NOW account for the purchase of a 1987 Cadillac automobile that was titled in both of their names.

In June 1979, three years before Genevieve and Geza married, Genevieve executed her will which distributed her entire estate to her four children from her prior marriage. Following Genevieve's death in June 1990, Geza filed notice to take under the widower's election of deferred and augmented marital property. *See* secs. 861.02 and 861.03, Stats. Geza sought either: (1) reimbursement for the funds expended on the residence for improvements if the probate court ruled that the residence was Genevieve's nonmarital property, or (2) the value of his one-half marital interest in the

166

residence if the court ruled that the residence was reclassified to marital property because he and Genevieve had contributed marital funds for improvements and because he also had applied uncompensated labor to improve the residence. The estate objected to Geza's claims.

The estate also filed claims against Geza for: (1) the unpaid property taxes on the residence which accrued after Genevieve's death while Geza was residing in the residence, and (2) the funds expended by Genevieve and Geza to purchase the Cadillac.

The probate court ruled in Geza's favor on all issues. The court held that the residence was mixed property under sec. 766.63, Stats., of the MPA because "substantive labor, efforts and marital cash were applied" during the marriage. The court further ruled that the residence was reclassified to marital property because "tracing is [not] possible." The court therefore awarded Geza the value of a one-half interest in the residence. Based on this conclusion, the court also denied the estate's claim against Geza for the residence's unpaid property taxes. Finally, the court denied the estate's claim for the $9000 allegedly loaned to Geza to purchase the 1987 Cadillac because the funds were drawn from a joint account and the vehicle was titled in both Genevieve's and Geza's names.

The estate appeals. Further facts will be provided as they become relevant to our discussion.

## II. MARITAL PROPERTY LAW

### A. *Standard of Review*

The estate argues that the probate court erred in its construction of the mixed property provisions, sec. 766.63, Stats., of the MPA. While the estate does not

167

appear to challenge the court's determination that Genevieve and Geza mixed their marital and nonmarital property, the estate does dispute the court's further determination that tracing could not be performed and that, as a result, total reclassification of the asset occurred.

A trial court's tracing determination is a finding of fact that will be upheld unless clearly erroneous. *In re Lloyd*, 170 Wis. 2d 240, 251, 487 N.W.2d 647, 651 (Ct. App. 1992). However, whether the correctly found facts establish the property as marital or nonmarital is a question of law we review independently. *Id.* at 252, 487 N.W.2d at 651. Similarly, our application of ch. 766, Stats., to the facts also presents a question of law and we need not defer to the trial court's conclusion. *Id.*

### B. Marital Property Principles Generally

All property of married persons either is, or is presumed to be, marital property unless it is proven to be otherwise. Section 766.31(1) and (2), Stats. Likewise, any property determined not to be marital property is presumed to be deferred marital property and may be subject to a surviving spouse's elective rights under sec. 861.02, Stats. *See sec.* 858.01(2) Stats.; 1 K. CHRISTIANSEN, F. WM. HABERMAN, J. HAYDON, D. KINNAMON, M. MCGARITY & M. WILCOX, MARITAL PROPERTY LAW IN WISCONSIN § 2.72b, at 2–116 (2d ed. 1986) [hereinafter MARITAL PROPERTY LAW IN WISCONSIN]. At death, the deceased spouse may freely dispose of only the one-half interest the decedent owns in each item of marital property. The decedent may also dispose of the whole of each item of his or her nonmarital property. Sections

766.31(3) and 861.01, Stats.; *Lloyd*, 170 Wis. 2d at 252, 487 N.W.2d at 651.

■

Despite the MPA's presumption that all spousal property is marital, spouses are permitted to own individual and predetermination date property. *See* secs. 766.31(6) & (8), Stats. *See also* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.1, at 3–2 to 3–3. Predetermination date property is not individual property, or a type of individual property, nor does it imply a classification all its own.[1] *Lloyd*, 170 Wis. 2d at 253, 487 N.W.2d at 652. However, during marriage, predetermination date property is treated as if it were individual property, and at death it may be subject to a deferred marital property analysis if the marital property presumption is overcome.[2] *Id.* at 253–54, 487 N.W.2d at 652.

[1] Under the act, "Property owned at a marriage which occurs after 12:01 a.m. on January 1, 1986, is individual property of the owning spouse if, at the marriage, both spouses are domiciled in this state." Section 766.31(6), Stats. In contrast, property *other than* that classified as individual under sec. 766.31(6) which is owned by either or both spouses at the determination date is referred to as predetermination date property. *See In re Lloyd*, 170 Wis. 2d 240, 253, 487 N.W.2d 647, 652 (Ct. App. 1992). *See also* 1 K. CHRISTIANSEN, F. WM. HABERMAN, J. HAYDON, D. KINNAMON, M. McGARITY & M. WILCOX, MARITAL PROPERTY LAW IN WISCONSIN § 2.70, at 2–111 to 2–112 (2d ed. 1986).

[2] Deferred marital property is property acquired by the spouses while married and while ch. 766, Stats., does not apply, which would have been marital property if it were acquired when ch. 766 applied. Section 851.055, Stats. Any property determined not to be marital property is presumed to be deferred marital property unless the presumption is rebutted. *Lloyd*, 170 Wis. 2d at 255–56, 487 N.W.2d at 653.

The party challenging the marital property (or deferred marital property) presumption has the burden to establish that the property at issue is not marital. *Id.* at 254, 487 N.W.2d at 652. Demonstrating that the time, method or source of the property's acquisition establishes the property as nonmarital rebuts the presumption as to that item of property. *Id.*

## III. THE RESIDENCE

The probate court concluded that Genevieve's nonmarital residence was reclassified to marital property under sec. 766.63(1) and (2), Stats., because "substantive labor, efforts and marital cash were applied" during the marriage and "tracing is [not] possible . . . as unreimbursed labor is involved." We construe the court's ruling as resting upon two independent determinations under sec. 766.63: (1) Genevieve and Geza's use of their marital funds for improvements to the residence constituted a mixing of marital and nonmarital property which reclassified the residence to marital property pursuant to sec. 766.63(1) because its nonmarital component could not be traced, and (2) the application of Geza's substantial uncompensated labor to the residence served to reclassify the residence under sec. 766.63(2) because the value of the labor could not be traced. We address each of these determinations in turn.

### A. *Mixing Marital Property With Nonmarital Property Pursuant to Sec. 766.63(1), Stats.*

### 1. *Trial Court Ruling*

The probate court made the following factual findings, none of which is disputed on appeal. Genevieve

owned the residence when she and Geza married, and she retained title in her sole name during her life. During the marriage, Geza received a pension and social security, while Genevieve received social security and the interest from her CD's. Generally, all of Genevieve's and Geza's funds were deposited into and transferred between their joint savings and checking accounts to pay for property taxes, utilities, insurance and other related residence expenses. After their determination date,[3] the spouses paid $3970.08 from their joint checking account for improvements to the residence.

From these facts the probate court concluded that Geza and Genevieve's contribution of their marital funds to pay for the improvements constituted "mixing marital property with property other than marital property." *See* sec. 766.63(1), Stats. The court also concluded that tracing was not possible and therefore ruled that Genevieve's separately titled residence was reclassified to marital property.[4] *See id.*

---

[3] The MPA generally first applies to spouses upon their determination date, which is the last to occur of the following: (1) marriage; (2) 12:01 a.m. on the date that both spouses are domiciled in Wisconsin; or (3) 12:01 a.m. on January 1, 1986. Sections 766.01(5) and 766.03(1), Stats. Genevieve and Geza were married in 1982 and domiciled in Wisconsin throughout the marriage. Thus, their determination date is January 1, 1986.

[4] The probate court's conclusion that tracing was not possible was premised upon its finding that "unreimbursed labor is involved." The court does not appear to have directly ruled whether tracing was possible as to the marital funds which the spouses contributed to Genevieve's nonmarital residence. However, this exercise is required under sec. 766.63(1), Stats.

### 2. Statutory Presumption

Ordinarily, we would begin any classification discussion under the MPA with the statutory presumption that all spousal property is marital property. Section 766.31(2), Stats. However, Geza's argument is premised upon a *reclassification* claim—a contention which necessarily concedes on a threshold basis that the residence is Genevieve's nonmarital property.[5] Thus, we begin our discussion in this case with the premise that the residence is Genevieve's nonmarital property and remained so unless reclassified.

### 3. Reclassification of Property Under the MPA

The MPA recognizes a variety of ways that reclassification may occur. Pursuant to sec. 766.31(10), Stats., a spouse may voluntarily reclassify his or her nonmarital property to marital property by, *inter alia*, gift, conveyance or marital property agreement.[6] Geza's claim, however, does not rest on this statute. Instead, he claims that the property was reclassified pursuant to the mixed property provisions of sec.

---

[5] Even if we were to indulge in the statutory presumption, it is readily rebutted in this case because Genevieve owned the residence before the spouses' January 1, 1986 determination date. Similarly, the presumption that the residence is deferred marital property also is rebutted because Genevieve owned it prior to her marriage to Geza in 1982. *See Lloyd*, 170 Wis. 2d at 255–56, 487 N.W.2d at 653; sec. 858.01(2), Stats.

[6] Section 766.31(10), Stats., also states that reclassification can occur by "written consent under s. 766.61(3)(e) or unilateral statement under s. 766.59 and, if the property is a security, as defined in s. 705.21(11), by an instrument, signed by both spouses, which conveys an interest in the security."

766.63, Stats., which recognizes another method by which reclassification can occur. Under this statute, nonmarital property is reclassified to marital property if the two are mixed to the point where the nonmarital component of the property cannot be traced. However, if the "component of the mixed property which is not marital property can be traced," reclassification does not result. *See* sec. 766.63(1).

### 4. Burden of Proof in a Mixed Property Proceeding

Geza's reclassification claim is based on "mixing." As with any claimant, we conclude that the burden to establish mixing is properly assigned to Geza. If this burden is satisfied, the marital asset is reclassified "*unless* the component of the mixed property which is not marital property can be traced." Section 766.63(1), Stats. (emphasis added). We think it logical that the party seeking to avoid reclassification by establishing tracing should carry the burden to do so. *See Lloyd,* 170 Wis. 2d at 260, 487 N.W.2d at 654. *See also* 1 MARITAL PROPERTY LAW IN WISCONSIN § 2.80, at 2–124. In this case, that party is the estate.

### 5. Tracing

In *Lloyd,* we addressed the tracing rules applicable to a reclassification claim under sec. 766.63, Stats. *Lloyd,* 170 Wis. 2d at 257–60, 487 N.W.2d at 653–54. Borrowing from divorce property division law, we performed an identity analysis. *See id.* at 259–60, 487 N.W.2d at 654.[7]

---

[7] In *Lloyd,* we also performed a character analysis. *Lloyd,* 170 Wis. 2d at 257–60, 487 N.W.2d at 653–54. Character addresses the manner in which the parties have chosen to title

Identity addresses whether the nonmarital component has been preserved in some present identifiable form so that it can be meaningfully valued and assigned—in other words, "traced." *Id.* at 260, 487 N.W.2d at 654. Thus, where individual or predetermination date property is mixed with marital property, the critical inquiry is whether, despite mixing, the nonmarital component of the property can be identified and valued. Section 766.63(1), Stats. *See also Brandt v. Brandt*, 145 Wis. 2d 394, 412, 427 N.W.2d 126, 132 (Ct. App. 1988). At the same time, this inquiry is also used to determine the proportionate marital and nonmarital ownership. 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.20, at 3–7.

### 6. Analysis

We now turn to the application of the statute to the facts of this case. As we have previously noted, Geza

---

or treat the asset. When determining the character of an asset, the donative intent of the owner of the nonmarital property is an issue. *Id.* at 259, 487 N.W.2d at 654.

Because our character analysis in *Lloyd* was performed in the context of a mixing claim under sec. 766.63, Stats., our decision in *Lloyd* leaves the impression that a character analysis is conducted under that statute. Although it would not affect the result in *Lloyd*, we wish to undo that impression here. As we have already noted, a different statute, sec. 766.31(10), Stats., expressly recognizes that a spouse may reclassify individual property to marital property by gift. Therefore, any character/gift/donative intent inquiry under a character analysis is performed under sec. 766.31(10)—not sec. 766.63, the mixed property statute. Here, Geza makes no claim of gift by Genevieve. Thus, our analysis, like the probate court's, is limited to a tracing/identity analysis under sec. 766.63(1).

had the burden of establishing mixing. At trial, the documentary evidence established the following payments, totaling $3970.08, by Genevieve and Geza from their joint checking account for the following "improvements" to the residence:

| | |
|---|---|
| New siding and gutters | $1016.00 |
| New siding and gutters | 500.00 |
| Wind damage | 150.00 |
| Carpet purchase | 490.28 |
| Carpet installation | 250.50 |
| Garage door purchase | 440.00 |
| Labor paid to Peter Kobylski (new 2-car garage) | 300.00 |
| Sewer till replacement | 219.00 |
| Concrete for new garage | 122.06 |
| Building material for new garage | 482.24 |

By this undisputed documentary evidence, Geza established that his and Genevieve's marital property was mixed with Genevieve's nonmarital property. Thus, Geza met his burden to establish mixing under the statute. The question then becomes whether "the component of the mixed property which is not marital property can be traced." Section 766.63(1), Stats. As we have already held, this burden to establish tracing was on the estate.

Here, the same evidence which shows mixing also demonstrates that tracing can be easily accomplished.[8]

---

[8] Although the estate had the burden to trace the nonmarital component of Genevieve's residence, ironically it was Geza who actually proffered the evidence to permit such tracing by establishing the specific amounts contributed from the spouses' marital accounts to the improvements. This is not

The "paper trail" of Geza and Genevieve's contribution of their marital funds to Genevieve's nonmarital residence provides a ready basis for segregating the nonmarital component of the marital property. Therefore, the estate met its burden of tracing the residence's nonmarital component. We conclude that the probate court erred when it concluded that tracing was not possible.

### 7. The Remedy When Tracing Can be Performed

This does not end our inquiry, however. As we have noted, sec. 766.63(1), Stats., precludes reclassification when tracing can be performed. However, the question remains as to what remedy *other than reclassification* the marital estate is entitled in such a setting. Wisconsin appellate courts have not yet addressed this question. Neither the mixed property statute, sec. 766.63(1), nor the "remedies" provision of the MPA, sec. 766.70, Stats., provides an express answer to this question. Since the trial court will have to address this question on remand in this case, we address it here.

The majority of community property states hold that when marital funds are used to improve the separate property of one of the spouses and tracing is established, the improvements acquire the classification of the underlying property. *See* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.25c, at 3–45 to 3–47, supp. 3–21. However, the marital estate has a right of reimbursement for the funds expended by the commu-

an entirely unanticipated phenomena under the MPA. *See* UNIF. MARITAL PROPERTY ACT § 14 comment, 9A U.L.A. 132 (1987).

nity for the improvements.[9] *See, e.g., Tester v. Tester,*

[9] There are two theories for dealing with the issue of mixing marital and nonmarital property: (1) the spouses' contribution of marital to nonmarital property creates an ownership interest in the asset based on the classification of funds contributed, and (2) one spouse will own the asset as nonmarital property and the other spouse will be entitled to a right of reimbursement for the marital property funds expended. *See* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.20, at 3–8, supp. 3–3.

> The community property states have adopted variations of either "reimbursement" or "community ownership" theories. Common to both theories is the general concept that the community should receive whatever renumeration is paid to a spouse for his or her time and effort because the time and effort of each spouse belongs to the community. Though sharing a common conceptual basis, the two theories diverge when it comes to valuation of the community's claim against separately owned stock that has appreciated by virtue of a spouse's time and effort. The "reimbursement" theory provides that the stock, as it appreciates, remains the separate property of the owner spouse. Under this theory, the community is entitled to reimbursement for the reasonable value of the time and effort of both or either of the spouses which contributed to the increase in value of the stock. The "community ownership" theory, on the other hand, holds that any increase in the value of the stock as a result of the time and effort of the owner spouse becomes community property.

*Jensen v. Jensen,* 665 S.W.2d 107, 109 (Tex. 1984). The *Jensen* court concluded that the reimbursement theory more nearly afforded justice to both the marital and nonmarital estate and that it obviated "the need for the trial court to undertake the onerous and quite often impossible burden that would be placed on it under the community ownership theory of attempting to determine just what factors actually contributed to the increase in value of the stock and in what proportion." *Id.*

Commentators note that all of the other community property states besides Wisconsin use both techniques depending on the applicable law and facts presented, and that it is likely Wisconsin also will use both. *See* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.20, at 3–9, supp. at 3–3. Nonetheless, it is suggested that

597 P.2d 194, 197 (Ariz. Ct. App. 1979); *Josephson v. Josephson*, 772 P.2d 1236, 1240 (Idaho Ct. App. 1989); *McKey v. McKey*, 449 So.2d 564, 566–67 (La. Ct. App. 1984); *Portillo v. Shappie*, 636 P.2d 878, 883 (N.M. 1981); *Jones v. Davis*, 131 P.2d 433, 434 (Wash. 1942).

Many of the community property decisions which allow reimbursement, however, differ on whether the amount of reimbursement should be the actual amount expended by the community, the enhanced value attributable to the improvements, or whichever is less.[10] *See* MARITAL PROPERTY LAW IN WISCONSIN § 3.25c, at 3–45 to 3–47, supp. 3–21 to 3–22. *See also, e.g., Lawson v. Ridgeway*, 233 P.2d 459, 464–65 (Ariz. 1951) (measure of the lien or right to reimbursement is the increase in value to the property and not the amount spent); *Josephson*, 772 P.2d at 1240 (measure of reimbursement is the increase in value of the property attributable to the community contribution, not the amount of the community contribution itself); *McKey*, 449 So.2d at 566–67 (where community property is used to improve a spouse's separate property, measure of reimbursement is the actual amount expended by the community for the improvement, not the enhance-

---

sec. 766.63(1), Stats., is predisposed toward the creation of an ownership interest. 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.20, at 3–9, supp. 3–3.

[10] Section 766.70, Stats., is the remedies provision of the MPA. This statute provides, in part, that "a court may . . . determine rights of ownership in . . . marital property and the classification of all property of the spouses." Section 766.70(2). However, this general language does not advise whether the claimant's measure of relief is the amount of the claimant's contribution of marital funds, the enhanced value of the nonmarital asset due to such contribution, or some combination of both.

ment of value); *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985) (claim for reimbursement is measured by the enhanced value to the benefited estate); *Hale v. Hale*, 557 S.W.2d 614, 615 (Tex. Ct. App. 1977) (enhanced value of the property due to the improvements or cost, whichever is less).

In *Anderson*, the Texas Supreme Court had occasion to examine the measure of reimbursement for funds expended by the community to improve separate property of one of the spouses. There, the spouses spent $20,238 to build a home on a lot owned by the wife prior to the marriage. At the time of the husband's death, this improvement had increased the value of the wife's separate property by $54,000. The husband's estate sought to include in the estate one-half the reimbursement due the community for the improvements to the wife's separate property. After working its way through the Texas appellate system, the Texas Supreme Court ultimately ruled that a claim for reimbursement is measured by the enhancement in value to the benefited estate, stating:

> The "cost only" rule, if followed, would provide an easy-to-apply measure since it would not require proof of enhancement. However, such a rule would, in many instances, permit the owner of the benefited estate to be enriched at the expense of the contributing estate. This is true because the estate which contributes the capital necessary to construct the improvements would not share in the increase in value resulting from the investment. The "enhancement or cost, whichever is less" rule, however, would permit the benefited estate the maximum recovery at the expense of the contributing estate in all situations. This does not comport with equity.

*Anderson*, 684 S.W.2d at 675. *See also Portillo*, 636 P.2d at 883 (tying the community's recovery to the amount of money spent may produce results which, depending on the circumstances, would be unfair to either the separate estate or the community. By treating such expenditures as an equity investment of community funds, rather than a loan, the community shares in the fluctuations of the market, taking both the gains and the losses).

We are persuaded by the *Anderson/Portillo* rationale that measuring reimbursement by the enhancement in value to the property is more likely to ensure the equitable treatment of both the contributing estate and the benefited estate in most situations. The rule is sensible and consistent with the equitable principles of our MPA, and we expressly adopt it here. *See* sec. 766.95, Stats. Where marital funds are used to improve the separate property of one of the spouses, a claim for reimbursement exists in favor of the marital estate measured by the property's enhanced value attributable to the improvements, not the amount of marital funds actually expended.[11] Thus, expenditures that relate merely to the maintenance of the property or which do not enhance the property's value are not to be considered. The party seeking such reimbursement has the burden of demonstrating that the improvement funds expended have enhanced the value of the spouse's separate property and the amount of enhancement. *See Tester*, 597 P.2d at 197; *Suter v. Suter*, 546

[11] Of course, because a spouse may freely dispose of the one-half interest he or she has in each item of marital property, *Lloyd*, 170 Wis. 2d at 252, 487 N.W.2d at 651, a surviving spouse would only be entitled to one-half the reimbursement amount to which the marital estate is entitled.

180

P.2d 1169, 1173 (Idaho 1976); *Rogers v. Rogers*, 754 S.W.2d 236, 239–40 (Tex. Ct. App. 1988). This burden assignment is akin to the general rule that a claimant must prove damages. *See, e.g., Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 387, 254 N.W.2d 463, 470 (1977); *Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 735, 442 N.W.2d 504, 506 (Ct. App. 1989).

Having determined the appropriate legal test for the remedy, we now turn to the evidence in this case as it bears upon this question. Although the parties presented some evidence of the value of the residence at various times,[12] the evidence does not expressly speak to the enhanced value attributable to the improvements. Since this is Geza's burden, we could visit this failure upon him with finality. However, since the probate court erred in its threshold determination that tracing could not be performed, and since this is the first Wisconsin appellate case to speak to this issue, we conclude that the fairer approach is to remand for further proceedings to allow the parties to present additional evidence on this question. Following such proceedings, the court shall determine which of the expenditures relate to mere maintenance of the property and which constitute improvements to the property. As to the latter, the court shall also determine the amount, if any, by which Genevieve and Geza's contributions of their marital property enhanced the value of the residence. The court shall then fix Geza's recovery accordingly.

---

[12] The evidence established that: (1) in 1982 when the spouses married, the assessed tax value of the property was $73,644; (2) when Genevieve died in 1990, the assessed tax value was $63,596; and (3) the property was sold by the estate in 1991 for $79,500.

## B. Mixing Industry With Nonmarital Property Pursuant to Sec. 766.63(2), Stats.

### 1. The Statute and the Trial Court Ruling

Geza's claim also was made pursuant to sec. 766.63(2), Stats., which recognizes a second type of mixing: a spouse's contribution of uncompensated industry to the other spouse's nonmarital property. The statute provides:

> **(2)** Application by one spouse of substantial labor, effort, inventiveness, physical or intellectual skill, creativity or managerial activity to either spouse's property other than marital property creates marital property attributable to that application if both of the following apply:
>
> (a) Reasonable compensation is not received for the application.
>
> (b) Substantial appreciation of the property results from the application.

It is important to note that, unlike subsec. (1) of the statute, this subsection *does not contemplate any reclassification of existing nonmarital property to marital property*. Rather, it contemplates *creation of a marital property interest attributable to the application of the industry*. In this case, therefore, Geza's industry created a marital property component in Genevieve's nonmarital residence if: (1) Geza applied *substantial* labor or skill to the residence, (2) Geza received no *reasonable* compensation for his efforts, and (3) the efforts produced a *substantial* appreciation of the residence.

Geza testified that during the marriage he painted the interior and exterior of the residence, assisted Genevieve's son in enlarging the one-car garage, and

182

did the yard work around the residence. Further, he testified that he received no compensation from Genevieve for these efforts. The probate court held that these efforts constituted substantial uncompensated labor, serving to reclassify the entire residence to marital property. The court also held that "tracing is [not] possible . . . as unreimbursed labor is involved."

Regarding substantial appreciation, the probate court found that the residence was assessed at $73,644 in 1982, $63,596 in 1990, and was sold in 1991 for $79,500. Based upon the testimony of a real estate appraiser, the court also found that the residence's rental value increased from $450 a month in 1986 to $550 to $600 a month as of the time of Genevieve's death. The court concluded:

> It is obvious that the real estate did not significantly increase in value from 1986–1990. It slipped in value. Common sense and the increased rental value would dictate that by painting, re-siding and putting up a new garage Geza contributed to the utility and comfort of the home, although the market did not reflect this. At work here are market forces other than mere activity by Geza. (There is nothing to show that by adding the aluminum siding and a garage he damaged the property.)
>
> This is something not contemplated by the statute, market value drop not related to the activity of the non-owning spouse while substantive labor, efforts and marital cash were applied. I believe that § 766.001 "liberal construction" and the presumption this property is marital aids Geza. I do not believe the [sic] tracing is possible here as unreimbursed labor is involved. Therefore, I believe that the home of the parties has become mixed under § 766.63(1), (2)(a), and (b).

### 2. Industry Mixing and Burden of Proof

Before applying the statute to the facts, we first address burden of proof considerations in an "industry mixing" claim under sec. 766.63(2), Stats. Just as with a "property mixing" claim under subsec. (1), we conclude that an "industry mixing" claim under subsec. (2) requires the claimant to establish the contribution of the industry. This burden lies with Geza in this case.

However, unlike a subsec. (1) "property mixing" case in which the mixing produces reclassification of the property unless tracing can be performed, a subsec. (2) "industry mixing" case does not produce any reclassification. Instead, if mixing is established, the statute provides that marital property *is created* to the extent of the additional value of the property attributable to the industry. Thus, unlike a "property mixing" case, the statute does not require proof of tracing; rather, it presumes such as a matter of law if substantial appreciation can be established. Therefore, the burden does not shift to the other spouse to establish tracing.

We therefore conclude that the burden properly lies with the claimant (here, Geza) to satisfy all the elements of a "industry mixing" claim pursuant to sec. 766.63(2), Stats. Again, these elements are: (1) the application of substantial industry to the nonmarital asset, (2) no reasonable compensation for the industry, and (3) the industry must have produced a substantial appreciation of the nonmarital asset.

### 3. Analysis

We now apply the statute to the facts of this case. For two reasons, we conclude that certain of the probate court's findings do not satisfy the legal standard

184

set out under sec. 766.63(2), Stats., and thus do not support its ultimate conclusion awarding Geza a marital property interest in the residence.

First, under the very words of the statute, the application of substantial uncompensated labor to a spouse's nonmarital property followed by substantial appreciation thereof does not serve to reclassify the whole or any portion of the property to marital property. *Rather, it creates marital property, and then only to the extent of the additional value of the property that is attributable to the substantial uncompensated labor.* Section 766.63(2), Stats. *See also* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.27a, at 3–50. Thus, the probate court's conclusion that the property was totally reclassified was error.

Second, we conclude that certain of Geza's labors and efforts do not constitute the "substantial" contribution required by the statute. Although the statute offers no insight as to what constitutes "substantial" effort, § 14 of the Uniform Marital Property Act is identical to sec. 766.63, Stats. The comment to § 14 related to physical labor explains substantial effort as follows:

> The rule of the section is strict. It articulates a bias against creation of marital property from such an act unless the effort has been substantial and has been responsible for substantial appreciation. Routine, normal, and usual effort is not substantial. Though drawing a precise line as to what is substantial and what is not is not possible, the section does not create opportunity to translate for recognizing minimal effort to a property interest. The section is only satisfied by proof of (1) a truly substantial effort followed by (2) a truly substantial appreciation *attributable to the effort* for which (3)

185

no reasonable compensation was received. . . . If the compensation was nominal or nonexistent, then the provisions of the section still require a showing that the effort was substantial and that substantial appreciation resulted from it. Otherwise there can be no quantification of the marital property created by the effort and the spouse expending the effort will simply have done so without anything demonstrable to show for it.

UNIF. MARITAL PROPERTY ACT § 14 comment, 9A U.L.A. 131–32 (1987) (emphasis in original).

Under the facts of this case, we conclude that Geza's painting and yard work, without more, qualify only as routine, normal and usual maintenance of the property and did not operate to create a marital property component in Genevieve's nonmarital residence. *See* 1 MARITAL PROPERTY LAW IN WISCONSIN § 3.27a, at 3–48. Therefore, we additionally reverse this portion of the probate court's ruling.[13]

We do agree, however, with the probate court's conclusion that Geza's efforts and labors in enlarging the garage qualified as a "substantial" contribution of industry. But this satisfies only half the statute since the industry must also produce a "substantial appreciation" of the nonmarital asset. Here, the probate court concluded that there was no evidence of an increase in market value.[14] Nonetheless, the court reasoned that

[13] This conclusion is consistent with our holding in the previous discussion regarding property mixing that the marital estate is not entitled to recover for expenditures related to routine maintenance.

[14] In this regard, we note that certain cross-examination testimony from the estate's appraiser did opine that a garage

Geza had established substantial appreciation because his efforts had contributed to the "utility and comfort of the home." While the court's ruling was an attempt to do fairness, it does not comport with the statutory requirement of substantial appreciation. Fair or not, the legislature has decreed that the contributing party cannot recover for uncompensated substantial industry if there is no resulting substantial appreciation.

As with the preceding issue, we choose not to direct an outright reversal with finality on this issue. Instead, as with the preceding issue, we choose to remand for reconsideration and further evidence, if the parties wish, on the question of substantial appreciation. We do so for three reasons: (1) the probate court's threshold error in concluding that reclassification was the consequence of Geza's labor and efforts, (2) evidence in the record arguably bearing on substantial appreciation which the probate court did not expressly address,[15] and (3) this is the first Wisconsin case to address this aspect of the MPA's mixed property provisions.

We therefore direct on remand that the probate court shall reconsider whether Geza's efforts and labor relating to the enlargement of the garage produced a substantial appreciation of the residence and, if so, to fix his recovery accordingly. As noted, the parties may supply further evidence to the court on this issue.

enlargement of the type produced by Geza's efforts would prompt an increase in value from $2000 to $3000. The probate court did not specifically address this testimony in its decision. We make no judgment whether this evidence satisfies the "substantial appreciation" requirement of the statute.

[15] *See* discussion *supra* n.14.

## IV. REAL ESTATE TAXES

Based on its conclusion that the residence was reclassified to marital property, the trial court also denied the estate's claim against Geza for $1250 in real estate taxes which accrued while Geza was living in the residence following Genevieve's death. The estate argues that an oral agreement existed between Geza and at least two of Genevieve's children that Geza would pay the property taxes and utility expenses on the residence in exchange for permission to continue residing there after Genevieve's death. Ronald May, the personal representative of the estate, testified that between June 1, 1990, the date of Genevieve's death, and March 23, 1991, the date Geza moved from the residence, $1250 in unpaid property taxes had accrued on the residence.

On appeal, Geza does not deny the existence of an oral agreement. Instead, he notes that real estate taxes are paid bi-annually rather than in monthly installments. Absent evidence that he agreed to pay the taxes on a prorated basis, Geza argues that it was incumbent upon the trial court to dismiss the claim because on January 31, 1991, he paid the last installment of taxes that became due while he was still residing at the residence.

The probate court dismissed the estate's claim on the basis of its conclusion that the residence was reclassified to marital property due to mixing. However, regardless of any reclassification determination, we conclude that the question of whether Geza incurred an obligation based upon this alleged agreement is separate from the question of whether the residence was reclassified to a marital asset. We see no reason why mutual owners of real estate may not

agree, as between themselves, as to who shall bear the burden of expenses related to the property. The essence of a contract is whether the minds of the parties have met on the same thing. This, however, is a factual determination for the trial court to make based upon the evidence before it. *Novelly Oil Co. v. Mathy Constr. Co.*, 147 Wis. 2d 613, 617–18, 433 N.W.2d 628, 630 (Ct. App. 1988). We reverse the court's ruling and we remand for the court to make the necessary factual findings regarding the alleged agreement and to fix any resulting legal obligations accordingly.

## V. THE CADILLAC AUTOMOBILE

The estate also asserts that the trial court erred by disallowing its claim against Geza for the $9000 paid by Geza and Genevieve from their marital funds to purchase a 1987 Cadillac automobile. The court denied the claim because the funds were drawn from a joint NOW account and the vehicle was titled in both spouses' names.

Geza and Genevieve purchased the automobile by trading in a jointly titled vehicle and paying the balance with a $8120 check drawn from a joint checking account and a $9000 check drawn from a joint NOW account. The joint NOW account was funded by the proceeds of a CD which Genevieve owned prior to the spouses' marriage and deposited into the account in July 1986.

Geza testified that Genevieve loaned him $9000 for the balance of the vehicle's purchase price because "she didn't want [me] to have to go out and make a loan." He testified further that "I mentioned to [Genevieve] when I used that $9,000 for the balance of the car that if she ever wanted the money just to ask me for it and I'd be more than happy to return those $9,000

to her." Also, Genevieve's son, Peter Kobylski, testified that Geza told him the money "was a loan and that there was a verbal agreement between [Genevieve and him] that he would repay [the money to Genevieve] on demand if she should ask for it."

We affirm the trial court's denial of the estate's claim against Geza for the money Genevieve contributed towards the purchase of the Cadillac. The estate premises its claim on Geza's admission at trial that he told Genevieve when the vehicle was purchased that he would repay her if and when she asked for the money to be paid back. Where, as here, a condition is provided, the fact upon which the condition is based must occur before a duty to perform the promise arises. *See, e.g., Kubly v. DOR*, 70 Wis. 2d 74, 77, 233 N.W.2d 369, 371 (1975). Here, Genevieve's loan was a personal claim which Geza was obligated to honor if Genevieve requested repayment during her lifetime. Genevieve, however, never requested repayment of the loan prior to her death. The vitality of the claim expired with Genevieve.[16]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[16] Finally, the estate asserts that the trial court erred by entering a judgment rather than an order in determining Geza's marital property interests in the estate. As the court must enter a final judgment to close the estate which reflects Geza's marital property interests and the distribution of the estate to the other heirs, *see* sec. 863.27, Stats., the estate is technically correct in this argument. However, the label attached to the court's ruling does not govern its legal efficacy. We have treated the court's "judgment" in this case as an order.