NAUGA, INC., Plaintiff-Appellant,

v.

WESTEL MILWAUKEE COMPANY, INC., d/b/a Cellular One, Defendant-Respondent.†

Court of Appeals

*No. 95–3263. Submitted on briefs August 7, 1997.—Decided January 20, 1998.*

(Also reported in 576 N.W.2d 573.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs and supplemental briefs of *Daniel J. Miske* of *Petrie & Stocking, S.C.,* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief and supplemental brief of *Steven J. Slawinski* of *O'Neil, Cannon & Hollman, S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Nauga, Inc., d/b/a Communication Connection (Nauga), appeals from the trial court judgment in its favor, entered by Judge Michael J. Barron following a jury trial, against Westel Milwaukee Company, Inc., d/b/a Cellular One (Westel), awarding more than $57,000 for breach of contract but denying pre-judgment interest. Nauga also appeals from Judge Barron's orders concluding that Westel's change of its commission schedule was not a violation of the Wiscon-

sin Fair Dealership Law (WFDL), and that it (Nauga) was not a dealer under the WFDL, and dismissing its WFDL claim. Additionally, Nauga appeals from an order, entered by Judge John J. DiMotto in a second Nauga/Westel case, and adopted by Judge Victor Manian (who succeeded to Judge Barron's calendar) in the first Nauga/Westel case, denying enforcement of the settlement contained in Nauga and Westel's July 1, 1996 "Authorized Agency Agreement," and rescinding that new agreement.

Nauga claims that Judge Barron erred as a matter of law in: (1) concluding that Westel's change of the commission schedule was not "a substantial change in the competitive circumstances of the dealership agreement" under the WFDL; (2) concluding that it was not a "dealer" within the meaning of the WFDL; and (3) denying its request for pre-judgment interest. Nauga also argues that Judge DiMotto erred as a matter of law in denying its motion to enforce the settlement contained in its new agency agreement with Westel and in rescinding that contract. We need not address Nauga's first three arguments because we conclude that the trial court, in the second case, erred in rescinding the new agency agreement containing the settlement, enforcement of which resolves both cases.

## I. BACKGROUND

In 1991, Nauga entered into an agency contract with Westel to market cellular telephone services. In 1993, Nauga filed an action against Westel complaining of lost sales resulting from Westel's alleged altering of the terms of the original contract, and claiming: (1) breach of contract; (2) violation of WFDL; (3) injury to business; and (4) tortious interference with existing and prospective contractual relations. The

parties ultimately proceeded to a jury trial, before Judge Barron, only on the breach of contract claim and part of the WFDL claim.

Deciding pretrial motions, Judge Barron concluded that the agency agreement allowed Westel to change a commission schedule without giving the notice referenced in the WFDL and, therefore, that Westel's change of Nauga's rate of commission was not a substantial change in competitive circumstances under the WFDL. Accordingly, the court ruled that Nauga could not present evidence of alleged damages or receive an award relating to the commission schedule change. At trial, shortly before the parties rested, the trial court further ruled that Nauga was not a dealer within the meaning of the WFDL, thereby eliminating the remaining WFDL issues from jury consideration. Thus, the jury only answered questions relating to the alleged breach of contract; the jury found in favor of Nauga.[1] On motions after verdict, the

---

[1]

### BREACH OF CONTRACT ISSUES

FIRST QUESTION: Did Cellular One breach its contract with Nauga, Inc. in March, 1992?　　　　Yes _X_ No __

SECOND QUESTION: If you answer Question No. 1 "Yes", then answer this question:

What, if any, damages were sustained by Nauga, Inc. as a result of that breach?　　　　$22,709.00

THIRD QUESTION: Did Cellular One breach its contract with Nauga, Inc. in October, 1992?　　　　Yes _X_ No __

FOURTH QUESTION: If you answer Question No. 3 "Yes", then answer this question:

What, if any, damages were sustained by Nauga, Inc., as a result of that breach?　　　　$13,813.00

### ACCOUNTING ISSUES

ANSWER EITHER QUESTION FIVE OR SIX, BUT NOT BOTH QUESTIONS

310

trial court denied Nauga's motion for pre-judgment interest.

In 1995, in a case before Judge DiMotto, Nauga sued Westel again, claiming that Westel breached their contract by hiring a Nauga employee, and that Westel violated the WFDL by engaging in an unfair trade practice.

In 1996, while Nauga's first suit was on appeal and Nauga's second suit was pending before Judge DiMotto, Westel offered a new agency agreement to its Wisconsin agents, including Nauga. The agreement included paragraph 30.10, a waiver of pending claims provision, providing, in part:

> AGENT's execution of this Agreement shall constitute acknowledgment that all of Cellular One's obligations under any predecessor agreements between Cellular One and AGENT have been fully performed, and that AGENT hereby releases any claim of any kind whatsoever which it now has or may have in the future arising from any predecessor agreement or relationship between Cellular One and the AGENT.

Counsel for Nauga, believing that paragraph 30.10 would release Westel from the claims in the two pending law suits, added paragraph 7.7, providing, in part:

> Payment. In exchange for AGENT accepting the duties and responsibilities outlined in this agreement, including the waiver of its claims under Article 30.10, Cellular One agrees to pay to AGENT the sum of $250,000. The payment is due upon the

---

FIFTH QUESTION: We, the jury, find in favor of Nauga, Inc. and assess damages in the amount of $21,179.25

SIXTH QUESTION: We, the jury, find in favor of Cellular One and assess damages in the amount of $_____.

inception of this agreement, but not later than September 15, 1996.

Nauga and Westel executed the new contract that included both paragraphs 30.10 and 7.7. Nauga and Westel, through their attorneys, signed a stipulation for the dismissal of both cases. Nauga then demanded payment of $250,000. Counsel for Westel responded by withdrawing from the stipulation and writing a letter to counsel for Nauga stating, in part, "This was the first time that I became aware that Nauga expected any compensation for abandoning its claims in both actions and that Nauga had made any changes to the Agency Agreement." When Westel refused to pay, Nauga filed a motion to enforce the settlement.

Advised of Nauga's motion, this court issued an order holding the appellate proceedings in abeyance and remanding the first suit to the trial court, before Judge Manian, for a ruling on Nauga's motion. Meanwhile, the second suit was still pending before Judge DiMotto and, because the issue on Nauga's motion in both suits was identical, the parties agreed, with Judge Manian's approval, that Judge DiMotto's decision would apply to both.

Judge DiMotto denied Nauga's motion to enforce the $250,000 settlement agreement. He concluded that although Nauga had not committed fraud in the formation of the settlement agreement, Nauga and Westel had not come to a meeting of the minds in reaching the settlement and, therefore, that the new contract was "void and unenforceable in its entirety ab initio." Thus, Nauga now appeals Judge DiMotto's order denying its motion and rescinding the contract containing the settlement agreement.

## II. DISCUSSION

Construction of an unambiguous contract presents a question of law, which we review *de novo. See Koenings v. Joseph Schlitz Brewing Co.*, 126 Wis. 2d 349, 366, 377 N.W.2d 593, 602 (1985). When reviewing a trial court's conclusion on whether a contract is enforceable, we examine the contract to determine what the parties contracted to do, not to make or reform it. *See Wisconsin Marine & Fire Ins. Co. Bank v. Wilkin*, 95 Wis. 111, 115, 69 N.W. 354, 354 (1897) (quoted with approval in *Marion v. Orson's Camera Ctrs. Inc.*, 29 Wis. 2d 339, 345, 138 N.W.2d 733, 736–37 (1966)). As the supreme court recently explained:

> [M]utual assent, or "meeting of the minds [ ]" . . . does not mean that parties must subjectively agree to the same interpretation at the time of contracting. Instead, mutual assent is judged by an objective standard, looking to the express words the parties used in the contract . . . . [T]he key is "not necessarily what [the parties] intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use."

*Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 157, 177–78, 557 N.W.2d 67, 75–76 (1996) (internal quotation marks and quoted source omitted) (first three bracket sets added; "[the parties]" in *Management Computer Servs.*).

Nauga does not dispute the trial court's finding that Westel never truly intended to assent to all the terms of the new agency agreement. Indeed, Nauga concedes exactly what Westel admits—that Westel failed to properly and thoroughly review the contract before executing it. Nauga correctly argues, however,

313

that Westel's negligence does not relieve it of contractual obligations, and that Westel's true intentions do not render the new agency agreement unenforceable.

The law is clear: absent fraud or mutual mistake, an executed unambiguous written contract is enforceable. As the supreme court explained many years ago in a breach of lease action:

> The facts already related clearly establish that there was no mutual mistake as to such termination clause, since Carney and Rutter, as officers representing the respondent in the execution of the lease, had no intention whatever with respect to the termination clause. They had not even read it and did not know that it was in the lease. . . .
>
> > "To justify reformation the evidence must be clear and convincing that both parties intended to make a different instrument, and must also clearly show that both had agreed upon facts which were different than those set forth in the instrument."
>
> Furthermore, the negligence of respondent's officers in not reading the lease, which reading would have disclosed the existence of the termination clause, bars them from having reformation. . . .
>
> > "It is well settled that, where a party accepts a written instrument in consummation of an agreement entered into, it is his duty to know its contents, unless there be fraud or mistake of such a nature that he could not reasonably have informed himself when put upon inquiry. Men, in their dealings with each other, cannot close

> their eyes to the means of knowledge equally accessible to themselves and those with whom they deal, and then ask courts to relieve them from the consequences of their lack of vigilance."

*Carney-Rutter Agency v. Central Office Bldgs.*, 263 Wis. 244, 252–53, 57 N.W.2d 348, 352 (1953) (citations omitted). Thus, regardless of the parties' actual intentions, their execution of an unambiguous written contract establishes an enforceable "meeting of the minds" as a matter of law.

Generally, only mutual mistake or fraud will excuse a party from the terms of an executed unambiguous written agreement. *See id.* In the instant case, the settlement agreement is unambiguous, and neither fraud nor mutual mistake occurred. The trial court's written order specifically states, "The Court does not find that fraud was committed by [Nauga] with regard to the alleged settlement." On appeal, Westel does not directly challenge that finding.[2] Further, Westel does not claim *mutual* mistake. Westel's argument rests on

---

[2] Westel does, however, attempt to reargue some of the factual matters supporting that finding. Westel continues to claim that Nauga cleverly inserted paragraph 7.7 so that it would not be noticed. The trial court found, however, that "to [Nauga's counsel's] credit, he did use a different type. 7.7 is a different type. It's at the bottom of the page. It does stand out. Different margins." Westel also continues to insist that its insertion of paragraph 30.10 was entirely innocent of any intent to eclipse Nauga's claims, but that Nauga's insertion of paragraph 7.7 was nefarious. The trial court considered that carefully, however, and after examining all the facts and circumstances involving insertion of paragraph 7.7 and the communications (or lack thereof) of its terms to Westel, commented, "I guess I have trouble with the argument that [counsel for Nauga] was trying to defraud Cellular One."

the contention, as expressed in its brief to this court, that its "*unilateral* mistake may be sufficient grounds for rescission and cancellation." (Emphasis added.)[3]

Thus, emerging from this rather complicated litigation are uncomplicated facts governed by clear legal principles. In short, while Nauga and Westel were litigating two suits before the trial and appellate courts, Westel submitted a new agency agreement to Nauga that included paragraph 30.10 stating, in part:

> AGENT's execution of this Agreement shall constitute acknowledgment . . . that AGENT hereby releases any claim of any kind whatsoever which it now has or may have in the future arising from any predecessor agreement or relationship between Cellular One and the AGENT.

The provision, "hereby releas[ing] any claim of any kind whatsoever," if enforceable, encompasses Nauga's

---

[3] By contrast, see *State Bank of LaCrosse v. Elsen*, 128 Wis. 2d 508, 518, 383 N.W.2d 916, 920 (Ct. App. 1986), in which this court stated that the "right to reformation for *mutual* mistake is not necessarily barred by . . . possible negligence in failing to read the security agreement." (Emphasis added.) Westel, however, offers an equitable argument: that Nauga knew that Westel could not conceivably intend to consent to a $250,000 settlement. Westel's argument is ironic, to say the least. First, Nauga already had won an award of more than $57,000 in the first case and was litigating the second case. Second, Nauga advised the trial court that it had "put together a damage schedule of $350,000." Further, while claiming that Nauga never could have realistically expected the settlement, Westel at the same time suggests that Nauga somehow was willing to relinquish all claims (including the more than $57,000 recovery), pursuant to paragraph 30.10, in exchange for nothing.

claims against Westel in the two pending law suits.[4] Realizing the potential consequences of paragraph 30.10, counsel for Nauga added paragraph 7.7 stating, in part:

> Payment. In exchange for AGENT accepting the duties and responsibilities outlined in this agreement, including the waiver of its claims under Article 30.10, Cellular One agrees to pay to AGENT the sum of $250,000.

Nauga and Westel executed the new agreement, containing both paragraphs 30.10 and 7.7. Paragraphs 30.10 and 7.7 are not ambiguous; the agreement was not reached by fraud or mutual mistake. The agreement is valid and enforceable.

■■

Although enforcement of the $250,000 settlement may seem harsh where one party, in fact, did not intend to assent, such an outcome is based on sound principles embodied in contract law. Indeed, very recently, the Seventh Circuit allowed for "fairly harsh implications" under circumstances comparable to those of this case. *See Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 590 (7th Cir. 1994). The court explained:

---

[4] In their arguments to the trial court, counsel for both parties acknowledged that if the new contract were enforceable, a fair reading of paragraphs 30.10 and 7.7 would require resolution of both suits. On appeal, Westel does not suggest otherwise. We do note, however, that in its brief to this court, Westel represents that it has "paid $63,024.17 in full satisfaction of its judgment" in the first case. We would reasonably assume, therefore, that that amount would be credited as a portion of the $250,000 Westel would pay Nauga under the settlement agreement.

> There is no requirement that parties discuss a contract's every term in order to be bound by it—indeed, such a rule would reward parties for their failure to read what they sign, hardly an incentive that contract law would seek to create. The district court relied on a line from an Illinois appellate court opinion: "the failure of the parties to agree upon or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking." But [the Illinois court] was discussing an *oral contract*, where the parties' discussions are the beginning and end of the analysis. We do not read [the Illinois case] to stand for the proposition that an exchange of documents does not give rise to a contractual relationship unless the parties discuss the contract's terms.

*Id.* at 592 (citation omitted).

■

Accordingly, we conclude that the parties' execution of their new agency agreement established an enforceable contract requiring settlement of their suits pursuant to paragraphs 30.10 and 7.7. Therefore, we reverse the trial court order of Judge DiMotto and remand to the trial courts of Judge DiMotto and Judge Manian for the entry of appropriate orders dismissing Nauga's underlying actions and enforcing the $250,000 settlement agreement.[5]

---

[5] Westel also argues that the settlement agreement "is void and unenforceable because it was procured through a prohibited ex-parte communication from Nauga's attorney directly to Westel without the knowledge or consent of Westel's counsel." Westel concedes that counsel for Nauga never actually bypassed counsel for Westel to contact a party directly but contends that counsel acted improperly by giving the contract to an officer of Nauga who "was the strawman who actually sent the

*By the Court.*—Judgment and orders reversed.

WEDEMEYER, P.J. *(dissenting).* I write sepa-
rately because I cannot agree with the result reached

altered agreement . . . to Westel." This, Westel maintains, vio-
lated Wisconsin Supreme Court Rules prohibiting counsel or
client from communicating directly with a represented opposing
party.

The trial court was not convinced. In the first place, the
trial court did not find any impropriety in this regard, repeat-
edly observing that both counsel and their clients engaged in
comparable practices. For example, the trial court commented:

> In essence, your clients have created this problem for both of
> you, because they decided to deal with each other in the first
> instance to the exclusion of both of you. And so you know, every-
> thing you [counsel for Westel] say, [counsel for Nauga] can use the
> exact same words. And everything he said, you can adopt the same
> words also.

In the second place, Westel offered nothing to counter Nauga's
counsel's representation in the trial court that when he learned
of Westel's allegation of impropriety, he called the Board of
Attorney's Professional Responsibility, told a BAPR attorney of
the facts, and was advised by that attorney that his conduct did
not violate the rules.

Additionally, we observe that Westel has presented no
authority to counter Nauga's argument that the preamble to
SCR Chapter 20, Rules of Professional Conduct for Attorneys,
precludes the very sort of argument Westel attempts to make.
The preamble states, in part:

> Violation of a rule should not give rise to a cause of action nor
> should it create any presumption that a legal duty has been
> breached. The rules . . . are not designed to be a basis for civil
> liability. Furthermore, the purpose of the rules can be subverted
> when they are invoked as procedural weapons.

Westel's reliance on *Bjelde v. Dolan*, 248 Wis.153, 21 N.W.2d
258 (1946) is misplaced. There, the supreme court commented

by the majority opinion. I would affirm the trial court's rescission of the new agency agreement containing the settlement provision. "The essence of a contract is whether the minds of the parties have met on the same thing. This is . . . a factual determination for the trial court to make based upon the evidence before it." *Estate of Kobylski v. Hellstern*, 178 Wis. 2d 158, 189, 503 N.W.2d 369, 381 (Ct. App. 1993). In reviewing factual questions, this court applies the "clearly erroneous" rule: this court shall uphold the trial court's findings unless they are clearly erroneous. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

In reviewing this matter, I conclude that the trial court's finding of fact that there was no meeting of the minds was not clearly erroneous and that this finding supports the trial court's conclusion of law that the stipulation and new agency agreement are not enforceable. In essence, my review involved examining a stipulation for dismissal conditioned upon an alleged contractual agreement. In a well-honed oral discourse from the bench, the trial court made a searching inquiry as to the actions and statements of the personnel and counsels involved in the drafting, reviewing,

---

that "the better practice in discussing settlement is to do so through the attorneys," and that a court "may well carefully scrutinize a settlement made direct with the party to an action who is at the time represented by counsel . . . ." *Id.* at 159, 21 N.W.2d at 261. In *Bjelde*, however, the defendant "felt he was forced to settle" when his lawyer failed to appear for a deposition. *Id.* Here, in sharp contrast, both Nauga and Westel were assisted by attorneys who had ample time and opportunity to evaluate the contract. Accordingly, we reject Westel's arguments regarding the alleged violation of the Supreme Court Rules.

and executing the stipulation for dismissal of Nauga's claims and Westel's new proposed agency agreement. It expressed concern about the conduct of the parties throughout their litigious relationship up to and including the drafting and execution of the relevant documents. It observed continuing distrust between them. It noted the absence of any discussion about the release of claims clause (Section 30.10 in the new proposed agreement) when the new agreement was presented to a representative of Nauga at a meeting called for the purpose of explaining the new proposed agency agreement. The court was troubled that, during the course of these negotiations, Westel circumvented its own counsel who was heavily involved in this litigation. As for Nauga's conduct, the trial court noted that not all of its proposed response changes were highlighted by different type. When the changes were made by Nauga's counsel, he did not initially communicate with Westel's counsel and, when he finally did, he only forwarded the first page and the signature page without including the $250,000 settlement provision. The record reflects, and the court recognized, that Nauga's counsel did not expect Westel to accept its settlement provision and was surprised when the agreement was returned unchanged and executed. The court then reasoned that Nauga, when confronted with the unexpected waiver of claims paragraph, believed that Westel was "trying to slip a fast one past" it and then countered with the $250,000 settlement condition.

With the evidence of these tactics before it, the trial court doubted that the conditions unilaterally inserted in the agreement were ever contemplated by both parties. When the trial court seasoned its examination with the recognized concepts of good faith, fair dealing and the duty to cooperate in a contractual set-

ting, it did not erroneously infer that there was no meeting of the minds. Its conclusion was reasonably based. Its analysis ineluctably leads to the result. I would conclude that there was no error on the trial court's part. Accordingly, I respectfully dissent.[1]

[1] Had this ruling been affirmed by the majority of the court, my analysis would turn to the additional issues raised: (1) whether the trial court erred in concluding that Westel's change of the commission schedule was not a substantial change in the competitive circumstances of the dealership agreement under the WFDL; (2) whether the trial court erred in concluding that Nauga was not a dealer within the meaning of the WFDL; and (3) whether the trial court erred in denying Nauga's request for pre-judgment interest. I would conclude that the trial court did not err when it found that the evidence was insufficient to provide protection under WFDL; and there was no trial court error regarding pre-judgment interest because there was a genuine dispute rendering pre-judgment interest inappropriate. My analysis on these issues, however, is not necessary because of the majority's disposition of this case.